**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**George RUIZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 2002.
Filed Feb. 27, 2003.

Mitchell S. Strutin, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com., appellee.

Before: BOWES, GRACI and OLSZEWSKI, JJ.

BOWES, J.

¶ 1 George Ruiz appeals the judgment of sentence of five to ten years imprisonment imposed after he was found guilty at a nonjury trial of robbery, conspiracy, and possession of an instrument of crime ("PIC"). We dismiss Appellant's claims of trial counsel's ineffectiveness, without prejudice for him to raise those claims in a petition filed pursuant to the PCRA, 42 Pa.C.S. § 9541, *et seq.* We affirm the judgment of sentence.

¶ 2 On July 29, 2000, Appellant and Rebecca Worrell committed an armed rob-

bery of the Saint Edmund's[1] Federal Savings Bank ("St. Edmund's Bank") at Passyunk Avenue and Mifflin Street, Philadelphia. The case proceeded to a nonjury trial on charges of robbery, conspiracy, and PIC. All of the following evidence was introduced by way of stipulation. Worrell approached teller Stephanie Coleman, aimed a gun at her, and demanded, "Give me large bills right now." N.T. Trial, 6/27/01, at 6. Ms. Coleman complied and gave Worrell approximately $7,200 in fifty-dollar denominations that were bound and marked with the St. Edmund's Bank logo. Worrell fled.

¶ 3 Ella Nettamele, a teller who witnessed the robbery, informed Frank Pizzo, another bank employee, of the crime, and Mr. Pizzo followed Worrell as she left the bank. Mr. Pizzo and a pedestrian, Fred Ayera, observed Worrell meet Appellant one-half block from the bank and hand him cash. Appellant and Worrell then fled on foot. Mr. Pizzo continued to follow the pair, who went inside a tavern located approximately one block from the scene of the crime.

¶ 4 Mr. Pizzo waited outside the tavern until police arrived. Appellant was arrested inside the tavern and was in possession of the starter gun used in the robbery as well as $950 in currency stamped with the St. Edmund's Bank logo. Worrell was seated next to Appellant and possessed the remaining $6,300 stolen from the bank. Worrell's statements to police following her arrest at the police station were introduced at Appellant's trial. She stated, "I'll beat this. I'm not worried about it. I'll say I'm crazy and kill myself." *Id.* at 10.

¶ 5 As noted, at Appellant's nonjury trial, all of the above evidence was entered by stipulation, including the statements made by Worrell. After the Common-

wealth presented its evidence, the defense rested. Appellant was convicted of all charges, and the case immediately proceeded to sentencing. The trial court permitted Appellant to speak before it imposed sentence, at which time Appellant indicated that the robbery was not planned and that he did not know that Worrell was going to rob the bank. Appellant received the mandatory minimum sentence of five to ten years imprisonment. This appeal followed.

¶ 6 On appeal, Appellant raises the following contentions:

I. The Appellant is entitled to a new trial as a result of the ineffective assistance of trial counsel for failing to object to the trial court's failure to conduct an adequate colloquy with regard to the Appellant's stipulated trial and trial counsel's failure to file a statement of matters complained of on appeal.

II. The Appellant is entitled to an arrest of judgment because the evidence is insufficient to sustain his convictions for robbery, criminal conspiracy and possessing an instrument of crime and due to trial counsel's failure to file a statement of matters complained of on appeal.

III. The Appellant is entitled to a new trial as a result of the ineffective assistance of trial counsel for failing to object to the trial court's consideration of the contents of the co-defendant's post-arrest statements in assessing the Appellant's guilt and trial counsel's failure to file a statement of matters complained of on appeal.

---

1. The record contains two spellings for the bank, which are St. Edmond's and St. Edmund's. We use the spelling from the trial transcript.

IV. The Appellant is entitled to a remand for resentencing as a result of the ineffective assistance of trial counsel for failing to object to the trial court's error in sentencing the Appellant in accordance with the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712 and trial counsel's failure to file a statement of matters complained of on appeal.

Appellant's brief at 1–2.[2]

■ ¶ 7 Because Appellant's first, third, and fourth issues assert the ineffectiveness of trial counsel and are raised for the first time in this direct appeal, we must examine the impact of the Supreme Court's recent pronouncement in *Commonwealth v. Grant*, — Pa. —, 813 A.2d 726 (2002), upon our ability to review those claims.[3] In *Grant*, our Supreme Court drastically modified the rule of law that provides for review of claims of trial counsel's ineffectiveness when those allegations have been raised for the first time on direct appeal.[4] The Court announced the following new precedent:

> We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review.[14]

14 The general rule announced today is limited by the issues raised in this case. Appellant does not raise an allegation that there has been a complete or constructive denial of counsel or that counsel has breached his or her duty of loyalty. Under those limited circumstances, this court may choose to create an exception to the general rule and review those claims on direct appeal. However, as there is no issue raising such a question in this case, such a consideration is more appropriately left to another day.

*Id.* at —, 813 A.2d at 738 (footnote omitted). The Court further declared that the rule was effective immediately and is to be applied to all cases now pending on direct appeal where an issue of trial counsel's ineffectiveness had been raised.

¶ 8 In announcing its holding, the Court examined the prevailing law in other jurisdictions and noted that the vast majority defer claims of trial counsel's ineffectiveness until collateral review rather than allowing them to be raised for the first time on direct appeal. Furthermore, the *Grant* holding is firmly grounded upon consideration of several judicial concerns that are implicated when a defendant raises an issue that has neither been raised in nor addressed by the trial court. First, when claims are not raised in the trial court, the appellate court has no opinion to review, which significantly hampers our ability to conduct meaningful appellate review. In addition, since those claims were not raised in the trial court, the record usually is not complete enough for us to conduct review since their resolution often will depend upon consideration of facts not developed in the record. Finally, as a corollary to the second consideration, in analyzing allegations of trial counsel's ineffectiveness without an adequate record, we

2. This language appears on the first two pages of Appellant's brief, which actually are not numbered.

3. We note that while Appellant frames his arguments by suggesting that counsel was ineffective for failing to file a Pa.R.A.P.1925(b) statement, the trial court never ordered counsel to file such a statement. Counsel cannot be ineffective for failing to file a statement when he was not ordered to do so. *See Commonwealth v. Perez*, 444 Pa.Super. 570, 664 A.2d 582 (1995)(counsel is not required to file a Pa.R.A.P.1925(b) statement unless ordered to do so by trial court).

4. As a subsidiary of that holding, the Court also ruled that in the collateral setting, a defendant no longer is required to layer allegations of ineffectiveness of all prior counsel to overcome waiver under the PCRA.

then are called upon to assess the credibility of assertions and operate as factfinders, a function that we are not designed to assume.

¶ 9 In *Grant,* the Supreme Court undoubtedly left the door open for the creation of exceptions. The fact that the rule is stated as being general rather than absolute and the fact that the language in footnote fourteen anticipates the creation of exceptions reinforce this conclusion. Nonetheless, we believe that this case is not one that warrants establishment of an exception because the facts herein fall squarely within the parameters of *Grant.*

■ ¶ 10 Appellant first claims counsel was ineffective for allowing him to proceed by way of stipulated evidence without ensuring that he understood that he was relinquishing his right to cross-examine witnesses. The record does indicate that Appellant was apprised of the rights he was relinquishing by proceeding to a non-jury trial, and the trial court explained to Appellant that he was proceeding by way of stipulated evidence. However, on the other hand, Appellant was not informed specifically by the trial court that he was relinquishing his right to cross-examination, and there is nothing in the record to indicate that he received a specific concession from the Commonwealth. Thus, the proceedings facially appear to violate *Commonwealth v. Williams,* 297 Pa.Super. 138, 443 A.2d 338 (1982) (counsel was ineffective for proceeding by way of stipulated evidence because counsel failed to ensure that defendant was informed that he was relinquishing the right to cross-examine witnesses).

¶ 11 Nonetheless, the record is not adequate for us to effectively review Appellant's claims. We are required to speculate regarding trial counsel's strategy. There may have been an understanding by trial counsel that the court would sentence more leniently if he proceeded by means of stipulated evidence; Appellant may have been made aware that he was relinquishing his right to cross-examination by means that are not currently in the record. *See Commonwealth v. Davis,* 457 Pa. 194, 322 A.2d 103 (1974) (where record indicated defendant was aware of consequences of stipulating to evidence and counsel negotiated a more lenient sentence by proceeding nonjury by way of stipulated evidence, counsel was not ineffective). Furthermore, we do not have the benefit of an opinion from the trial court examining these claims. This case undoubtedly calls into question the very concerns raised by our Supreme Court in deciding *Grant.*

¶ 12 We reach the same conclusion as to Appellant's other two claims of ineffectiveness. He suggests trial counsel was ineffective for allowing Worrell's post-arrest statements to be considered by the factfinder and in not objecting to the sentencing court's imposition of the mandatory minimum sentence. Again, these claims require speculation concerning trial strategy.

¶ 13 Our ability to properly analyze and review Appellant's claims of ineffectiveness will be markedly enhanced by the creation of a proper record and preparation of a trial court opinion. Thus, Appellant's claims of ineffective assistance of trial counsel fall within the general rule announced in *Grant.* We therefore dismiss those claims without prejudice to Appellant's right to raise them in a PCRA petition.

■ ¶ 14 Appellant raises one additional issue that has been preserved and addressed by the trial court. That issue relates to the sufficiency of the evidence supporting his convictions. In reviewing a challenge to the sufficiency of the evidence, we view "all the evidence and rea-

sonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, [and] must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt." *Commonwealth v. Riley,* 811 A.2d 610 (Pa.Super.2002).

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Johnson,* 719 A.2d 778, 784–785 (Pa.Super.1998) (citations omitted). We have identified factors to be utilized in determining the sufficiency of the evidence supporting the existence of a conspiracy:

Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert,* 795 A.2d 1010, 1016 (Pa.Super.2002) (citation omitted) (quoting *Commonwealth v. Olds,* 322 Pa.Super. 442, 469 A.2d 1072, 1075 (1983)).

¶ 15 In the present case, two eyewitnesses observed Appellant and Worrell one-half block from the bank. Worrell handed Appellant some of the proceeds of the robbery. They then fled together on foot and went inside a tavern located approximately one block from the scene of the crime. Police arrived shortly and discovered Appellant inside the tavern and in possession of the starter gun used in the robbery as well as $950 in currency stamped with the St. Edmund's Bank logo. Worrell was seated next to Appellant and possessed the remaining $6,300 stolen from the bank.

¶ 16 Appellant associated with and acted in concert with the armed robber, supplying her with the gun used to perpetuate the crime. Appellant's knowledge of her actions can be inferred by the fact that he gave her the gun, received the proceeds within view of the bank, and then fled with her. Indeed, the trial court concluded that Appellant operated as a lookout. Appellant also participated in the object of the

conspiracy by receiving a portion of its proceeds. All four factors are present in this case, and we conclude that the evidence was sufficient to support the existence of a conspiracy.

¶ 17 Since the evidence was sufficient to establish the existence of a conspiracy, Appellant is legally liable for Worrell's actions committed in furtherance of that conspiracy:

> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.

*Lambert, supra* at 1016–1017 (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (Pa.Super.2001)). Thus, there was sufficient evidence to sustain the trial court's finding that Appellant is guilty of the crimes actually committed by Worrell in furtherance of their conspiracy, including robbery and possession of an instrument of crime.

¶ 18 Appellant's claims of ineffectiveness are dismissed without prejudice for him to raise them in a PCRA petition. Judgment of sentence affirmed.

¶ 19 Judge GRACI Concurs and files a Concurring Opinion.

GRACI, J., Concurring.

¶ 1 I join the opinion of the majority to the extent it rejects Appellant's attack on the sufficiency of the evidence supporting his convictions.

¶ 2 I also agree with the majority that the remaining issues, raised for the first time on appeal, claiming ineffective assistance of trial counsel, must be dismissed without prejudice to Appellant's right to raise them in a PCRA petition as directed by our Supreme Court in *Commonwealth v. Grant,* —— Pa. ——, 813 A.2d 726 (2002). *Grant,* as the majority notes, is applicable to this case. *Id.* at 738. I would go no further.

¶ 3 I am concerned with the majority's statement that "[i]n *Grant,* the Supreme Court undoubtedly left the door open for the creation of exceptions" but that "this case is not one that warrants establishment of an exception because the facts herein fall squarely within the parameters of *Grant.*" Majority Op. at 96.

¶ 4 In *Grant,* the Supreme Court identified two "limited circumstances" where "[that] court may choose to create an exception to the general rule [which it had just announced] and review those claims on direct appeal." *Grant,* 813 A.2d at 738 n. 14. Those "limited circumstances" were specifically identified as involving "an allegation [1] that there has been a complete or constructive denial of counsel or [2] that counsel has breached his or her duty of loyalty." *Id.* The Supreme Court reserved unto itself the choice to create exceptions to the general rule it announced. It did not grant this Court any license to create any exceptions to its general rule. As an intermediate appellate court, it is our role to effectuate the decisional law of the Supreme Court. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382, 386 (1985). If these or any exceptions to the general rule are to be created, they are for the Supreme Court and that Court alone.

¶ 5 I am also concerned with the implication of the majority's statement that "the record is not adequate for us to effectively

review appellant's claims." Majority Op. at 96. Such a statement suggests that there are some claims of ineffective assistance of trial counsel that can be resolved when raised for the first time on appeal. Such a conclusion is directly at odds with the rule announced in *Grant*. *Grant* provides no exception for claims that may be resolved, either for or against an appellant, based on the record forwarded to the appellate court on direct appeal.[5] The Supreme Court has yet to announce any exceptions to the rule it announced in *Grant*.

¶ 6 If, as the majority implies, there are some claims of ineffective assistance of trial counsel that may be resolved on direct appeal, then new counsel representing an appellant on direct appeal will be required to raise every such arguable claim on direct appeal, *Grant* notwithstanding. Otherwise, when a claim of trial counsel's ineffectiveness is raised for the first time in a PCRA petition it will be subject to a legitimate waiver argument for dismissal since "the petitioner could have raised it but failed to do so . . . on appeal." 42 Pa.C.S.A. § 9544(b). The PCRA courts in the first instance, and this Court on appeal, will then be required to determine if the record on direct appeal was "adequate to effectively review [the] claims." PCRA counsel in every instance will again be required to layer the ineffective assistance of appellate counsel in order to avoid any possible PCRA waiver claim. That is exactly the situation which *Grant* intended to eliminate. *Grant*, 813 A.2d at 739. We will have turned a rule that was intended to curb such litigation into one that spawns it. We avoid such a result by applying what I believe is the clear dictate of *Grant*: dismiss claims of ineffective assistance of trial counsel that are raised for the first time on direct appeal.[6]

¶ 7 Lastly, since we can no longer resolve claims of ineffective assistance of trial counsel which are raised for the first time on direct appeal, I do not think we should comment further on the Appellant's

**5.** Of course, if an appellant obtained new counsel after verdict, new counsel could seek a new trial based on the ineffective assistance of trial counsel in a timely-filed post-sentence motion under Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(iv). Pa.R.Crim.P. 720(B)(1)(a)(iv). The trial court would then have to determine if a hearing was required or if the claim could be resolved on the existing record. Pa.R.Crim.P. 720(B)(2)(b). Thereafter, the trial court could resolve the ineffectiveness claim in the time frame established by the rule. Pa.R.Crim.P. 720(B)(3). If that issue was then raised on direct appeal, this court could resolve it. That situation is different from the one governed by *Grant* where the issue of trial counsel's ineffectiveness was not raised in a timely post-sentence motion but was, instead, raised for the first time on appeal. *Grant* simply has no application where the issue was properly raised and decided by the trial court before the direct appeal process started. I note in this regard that while *Grant* specified that there would be no claim of waiver under the PCRA where new appellate counsel did not raise trial counsel's ineffective assistance for the first time on direct appeal, *id.*, at 738, the same may not be true if new counsel represented the defendant at a time when he or she could have raised and preserved this issue in a post-sentence motion. *See* Pa.R.Crim.P. 720 *Comment* (MISCELLANEOUS). Like many of the implications of *Grant*, resolution of that situation must await another day.

**6.** I view *Grant* as a natural and logical extension of the body of case law developed by the Supreme Court over the last several years in which the "Court has consistently, repeatedly and unequivocally recognized . . . the exclusivity of the PCRA in the arena in which it operates." *Commonwealth v. Eller*, 569 Pa. 622, 807 A.2d 838, 842 (2002), *citing Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564, 570 (1999). Clearly claims of ineffectiveness of trial counsel are recognized under the PCRA. 42 Pa.C.S.A § 9543(a)(2)(ii). Such claims are regularly brought under the PCRA. It is in keeping with this body of case law that claims of trial counsel's ineffective assistance should be funneled through the PCRA.

ineffectiveness claims. Majority Op. at 96. The PCRA court is required to examine any properly pleaded claims of ineffective assistance in the first instance. We should do nothing to intrude on that function. It is not our role to issue advisory opinions. *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827, 833 (1989) (advisory opinion is without legal effect); *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa.Cmwlth.1998) (citing *Okkerse* for the proposition that a judicial determination that is unnecessary to decide case is an "advisory opinion and has no legal effect").

¶ 8 Accordingly, I join the opinion to the extent it affirms Appellant's conviction. Since the majority properly applies the rule of *Grant* as I understand it, I concur in the result.