COMMONWEALTH of Pennsylvania,
Appellee

v.

James Willard THORNTON a/k/a
James W. Thornton,
Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.
Filed April 3, 2003.

**32**

M. Susan Ruffner, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before: GRACI, J., CAVANAUGH, J., and McEWEN, P.J.E.

CAVANAUGH, J.

¶ 1 James Willard Thornton ("Thornton"), appeals from the judgment of sentence entered January 10, 2002, for an aggregate term of twenty-four to sixty months' imprisonment with credit for time served and a recommendation for boot camp. The judge, after a non-jury trial, found Thornton guilty of possession of a controlled substance, namely crack co-

caine, and carrying a firearm without a license and not guilty of possession with intent to deliver. We affirm, finding that under *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), we must dismiss without prejudice Thornton's claims of ineffective assistance of trial counsel. "Appellant can raise these claims in addition to other claims of ineffectiveness in a first PCRA petition and at that time the PCRA court will be in a position to ensure that Appellant receives an evidentiary hearing on his claims, if necessary." *Grant*, 813 A.2d at 739.

¶ 2 The trial court presented the facts, as gleaned from a January 10, 2002 nonjury trial:

Around 1:00 a.m. on February 11, 2000, jitney driver Jeffrey Lee picked up three passengers in Elmore Square in Pittsburgh.[1] The defendant got into the front seat and the other two men got into the back seat. Lee dropped the two back seat passengers off and agreed to take defendant to the Northview Heights section of Pittsburgh.

Lee drove to Route I–279 and intended to get off at the Hazlett Street exit. It was raining heavily and Lee's windshield was fogging up, causing him to miss the exit and get off on McKnight Road instead. Due to the weather and fogged windshield, Lee was weaving a bit, driving slowly and slowing down at green lights. As a result, Officer Ga[e]rtner of the Ross Township Police Department came up behind Lee and activated his red lights. Lee pulled into the parking lot of a restaurant and Ga[e]rtner pulled up behind him.

At this point the defendant said to Lee, "I have a gun. Take this. I can't

stand to get caught with this because I am on probation." The defendant pulled a holstered gun from under his jacket and threw it at Lee's feet. Lee put the car in gear and rolled down the window. [Lee] then pulled the key from the ignition, threw it out of the car, thrust both arms out the window and said to the approaching Ga[e]rtner, "Do not approach my car. There is a weapon in my car." Ga[e]rtner called for backup; Officer Remaley was one of the officers who responded. Both Lee and the defendant were taken out of the vehicle, handcuffed, and taken to the police station in separate police units. Ga[e]rtner then looked in the car. When he walked back from the vehicle he was carrying a holstered gun.

Back at the police station, Ga[e]rtner and Remaley searched the defendant. From his underwear the officer retrieved a plastic baggie containing crack cocaine. The cocaine and the gun were submitted to the Allegheny County Department of Laboratories for testing. The total weight of the cocaine was 4.8 grams. The gun was a .38 special caliber revolver found to be in good working order, with a barrel length of 4½ inches. The defendant was not licensed to carry a firearm.

Trial Op., May 28, 2002, at 2–3 (citations omitted). The trial testimony also revealed that the parties dispute how long Gaertner followed Lee before initiating a traffic stop.

¶ 3 The notes of testimony also reflect Thornton's trial counsel belated recognition that the arresting officer was not available to testify.[2] Thornton's trial coun-

---

1. A jitney is essentially a taxicab.

2. The arresting officer was recalled to active military duty for at least one year. Thornton's appellate brief contends that he "was

never apprised of Officer Ga[e]rtner's unavailability." More precisely, Thornton's trial counsel was aware that an officer was unavailable but was unaware that it was the

sel requested a continuance, which the trial court denied after brief arguments. Thornton was found guilty, waived his right to a pre-sentence investigation, and was sentenced that same day. On March 11, 2002, Thornton, *pro se,* requested the right to file an appeal *nunc pro tunc,* which the trial court granted on March 20, 2002. Thornton, now represented, raises the following issues:

I.  Was trial counsel ineffective for failing to file a motion to suppress the evidence and for advising Mr. Thornton to proceed to a non-jury trial when based on the narrative report prepared by Officer Robert Gaertner of the Ross Township Police Department, the police lacked reasonable and articulable grounds for the traffic stop, and therefore the evidence against Mr. Thornton would have been suppressed?

II. Was trial counsel ineffective for failing to investigate and present evidence of bias of the Commonwealth's key witness, Jeffrey Lee, who also was arrested in connection with this case, and was released after he gave a statement claiming that the gun found at his feet belonged to Mr. Thornton?

III. Did the court err in denying the motion for continuance when the Commonwealth revealed that the arresting officer was not available to testify on the date, insofar as no evidence was presented as to the identity and condition of the firearm allegedly found in the vehicle? Alternatively, was counsel ineffective for failing to make this argument in support of her motion for continuance?

IV. Was trial counsel ineffective for failing to object to the admission of the firearm into evidence on the grounds that the Commonwealth failed to establish a proper chain of custody for the weapon insofar as the officer who allegedly found the gun did not testify at trial?

¶ 4 We pause a moment to amplify Thornton's third issue. During trial, Thornton's counsel discovered that the arresting officer was not available to testify and therefore requested a continuance. Thornton asserts that the trial court erred in denying his request or, alternatively, that his trial counsel was ineffective in failing to make the following argument.

¶ 5 Apparently, Thornton contends that "the identity' of the gun [specifically, the barrel length] must be established," to show a violation of 18 Pa.C.S.A. § 6106 ("Firearms not to be carried without a license.") Appellant's Br. at 30. Officer Gaertner's testimony, Thornton argues, was material to establish the identity of the recovered gun. It appears that Thornton is arguing that without the officer's testimony, the Commonwealth could not sustain its burden of proof as to this violation, and therefore the defense's motion for continuance "should have been granted in order secure [sic] this material witness." *Id.* at 31. Thornton continues:

> Alternatively, trial counsel was ineffective for failing to make this argument in support of her [trial counsel's] motion for continuance. Establishing the identity and condition of the firearm was essential to [sic] Commonwealth's case, and trial counsel was ineffective for presenting this argument before the lower court.

*Id.* In short, Thornton apparently argues that the trial court should have granted his

arresting officer. *See* N.T., Jan. 10, 2002, at 28.

motion for continuance to obtain Gaertner's testimony, which would bolster the Commonwealth's case.

¶ 6 The Commonwealth, however, argues that the trial court did not abuse its discretion in denying Thornton's motion for continuance. Alternatively, the Commonwealth contends that trial counsel was not ineffective for two reasons. First, that Thornton's argument supports a Commonwealth request for continuance and second, both Lee and Remaley identified the gun and counsel stipulated to the crime lab report identifying the barrel length of the retrieved gun.

¶ 7 At trial, while Thornton advanced a number of arguments in support of his request for continuance, he did not present the aforementioned one. The trial court, however, distilled Thornton's arguments down to two and after briefly discussing them, denied the request. *See* N.T., Jan. 10, 2002, at 48–51. The trial court essentially found that it could not justifiably "delay this trial for a year to get somebody in here who may add nothing to the case whatsoever." *Id.* at 51.

¶ 8 Before addressing Thornton's claims, we examine the impact of *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), which was decided after the parties submitted their briefs. We interpreted *Grant* in *Commonwealth v. Rosendary,* 818 A.2d 526 (Pa.Super.2003) (Cavanaugh, J.).

¶ 9 *Grant* held, "that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Grant,* 813 A.2d at 738. The rationale behind the *Grant* rule rested on three grounds. "First, ineffectiveness claims, by their very nature, often involve claims that are not apparent on the record." *Id.* at 737. "Second, even presuming the merit of the claim is apparent on the existing record, oftentimes, demon-

strating trial counsel's ineffectiveness will involve facts that are not available on the record." *Id.* "Third, as multiple courts have recognized, the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." *Id.* It is for these reasons, the *Grant* court concludes, that a majority of federal and state jurisdictions have generally chosen not to address ineffectiveness of trial counsel claims on direct appeal.

¶ 10 We find, however, that *Grant* does not bar the adjudication of *all* ineffective assistance of trial counsel claims on direct appeal. *Cf. Rosendary,* 818 A.2d at 530 n. 2 (noting that the "new [*Grant*] rule leaves open the issue regarding the propriety of raising a claim on direct appeal of trial counsel's ineffectiveness which is apparent of record.") In short, we do not believe our supreme court intended to establish an absolute rule. *But see Commonwealth v. Ruiz,* 819 A.2d 92 (Pa.Super.2003) (Graci, J., concurring) (finding the *Grant* rule is absolute); *Rosendary,* 818 A.2d 526 (Pa.Super.2003) (Graci, J., concurring) (same).

¶ 11 The *Grant* court, for example, cites *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *United States v. Gambino,* 788 F.2d 938, 950 (3d Cir.1986) for the proposition that, in federal court, "exceptional circumstances may exist where the ineffectiveness is patent on the record and therefore, can be addressed on direct appeal." *Grant,* 813 A.2d at 734–35. Other state jurisdictions preferring collateral review of such claims, the *Grant* court noted, "will only review those claims on direct appeal that can be adequately reviewed on the existing record." *Id.* at 735. State jurisdictions that prefer such claims be raised on direct appeal, the *Grant* court also not-

ed, "limit that requirement to claims of ineffectiveness that 'were known or apparent from the record.'" *Id.* (citations omitted).

¶ 12 Our supreme court has even suggested that we may review on direct appeal; for example, allegations of "a complete or constructive denial of counsel" or a breach of counsel's duty of loyalty. *See id.* at 738 n. 14 (noting, "this court may choose to· create an exception to the general rule and review those claims on direct appeal.")

■■■ ¶ 13 Nor do we find that a resolution of ineffective assistance of trial counsel claims on direct appeal requires "new counsel representing an appellant on direct appeal...to raise every such arguable claim on direct appeal, *Grant* notwithstanding." *Ruiz,* 819 A.2d at 99 (Graci, J., concurring); *Rosendary,* 818 A.2d at 532 (Graci, J., concurring). "[A] claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness." *Grant,* 813 A.2d at 738.

Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity. Our holding today does not alter the waiver provision of the PCRA, 42 Pa.C.S. § 9544(b); it merely alters that time when a claim will be considered waived.

*Id.* While such ineffective assistance of trial counsel claims could be raised during direct review, *Grant* abrogates any requirement, implied or otherwise, that such

claims shall be raised during direct review. Failure to raise such ineffectiveness claims on direct appeal will not result in a waiver under 42 Pa.C.S.A. § 9544(b).[3] Thus, while *Grant* recommends that we dismiss, without prejudice, claims of trial counsel's ineffectiveness on direct appeal, there is no suggestion by our supreme court that we should defer *all* such claims.

■■ ¶ 14 We now examine Thornton's claims in light of *Grant.* Thornton, directly appealing his judgment of sentence, claims that his trial counsel failed to perform certain actions or to argue certain points. Specifically, Thornton asserts that his trial counsel was ineffective for failing to file a motion to suppress; failing to investigate and present evidence of Lee's bias; that the court erred in denying his motion for continuance, or alternatively, trial counsel was ineffective for failing to argue a particular argument; and failing to object to the firearm's admission into evidence.

¶ 15 With respect to these claims and based upon the state of this record, we find that they are best addressed on collateral review.[4] In short, we will not apply the tripartite ineffective assistance of trial counsel test based on this record.

¶ 16 As the *Grant* court noted:

Many of these claims are based on *omissions,* which by their very nature, do not appear on the record and thus, require further fact-finding, extra-record investigation and where necessary, an evidentiary hearing.

Related to this rationale is the general belief that an appellate court should

---

3. We acknowledge the possibility that on direct appeal, counsel will continue to raise claims of ineffective assistance of counsel and quantify such claims as resolvable upon the instant record.

4. Based upon our present reading of the record, we note our concern as to the Commonwealth's probable cause in initially seizing Lee's vehicle and defense counsel's failure to file a motion to suppress.

not consider issues that were not raised and developed in the court below.... The trial court is the court that had the opportunity to observe counsel's performance firsthand and is therefore in the best position to make findings related to both the quality of trial counsel's performance and the impact of any shortfalls in that representation. By requiring ineffectiveness claims to be raised on direct appeal when new counsel has entered the case, the trial court is eliminated from the process, leaving the appellate court in an awkward position as to the manner in which these claims can be assessed. Appellate courts rarely function as fact-finders and do not have the resources to do so.

*Grant,* 813 A.2d at 736 (citations omitted) (emphasis supplied); *accord Rosendary,* 818 A.2d at 529–30.

¶ 17 We do not find this record adequately developed for us to address Thornton's claims. We believe that these claims, based on the present state of this record, are best addressed on collateral review after the PCRA court has made findings as to the effectiveness, or lack thereof, of trial counsel. Thus, we affirm Thornton's judgment of sentence and dismiss his claims, without prejudice.

¶ 18 Judgment of sentence affirmed.

¶ 19 Judge GRACI files a Concurring Opinion.

GRACI, J., Concurring.

¶ 1 I concur in the result.

¶ 2 I agree with the majority that Thornton's judgment of sentence should be affirmed. I also agree that his claims of ineffective assistance of trial counsel, raised for the first time on appeal, must be dismissed without prejudice to Thornton's

right to raise them in a PCRA petition as commanded by our Supreme Court in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002).

¶ 3 I agree with the majority's explanation of the rule announced in *Grant.* Majority Op. at 35. I also agree with the majority's application of *Grant* in resolving this case. Majority Op. at 36–37. However, for the reasons set forth in my concurring opinions in *Commonwealth v. Ruiz,* 819 A.2d 92 (Pa.Super.2003) (Graci, J. concurring), and *Commonwealth v. Rosendary,* 818 A.2d 526 (Pa.Super.2003) (Graci, J. concurring), I do not agree with the sentiments expressed by the majority concerning possible exceptions to the general rule announced in *Grant* and how *Grant* may allow for the resolution of some claims of ineffective assistance of counsel which are raised for the first time on direct appeal. Majority Op. at 35–36. Like similar discussions in *Rosendary* and *Ruiz,* the discussion in this case is *dicta* as it is clearly not necessary to the resolution of this case.[5]

¶ 4 I am compelled to write further, however, to make two points. First, the majority seems to misunderstand the import of a statement it quotes from my concurring opinions in *Ruiz* and *Rosendary* when the majority says, "Nor do we find that a resolution of ineffective assistance of trial counsel claims on direct appeal requires 'new counsel representing an appellant on direct appeal ... to raise every such claim on direct appeal, Grant notwithstanding.' *Ruiz,* 819 A.2d at 99 (Graci, J. concurring); *Rosendary,* 818 A.2d at 532 (Graci, J. concurring)." Majority Op. at 36. The majority takes those words out of context.

---

5. Of course, if the discussion of this point in either *Ruiz* or *Rosendary* was not *dicta,* while I disagree with it, I would be bound to follow it.

¶ 5 In the passage in which they are found, I was explaining the effect of the exceptions the *Rosendary* and *Ruiz* majorities were espousing. As an examination of the full passage shows, I was not saying that counsel was required to raise all claims of ineffective assistance of trial counsel on direct appeal. That would obviously be in direct contravention of *Grant*. In context, I said the exact opposite. The full passage from both concurring opinions reads as follows:

> **If, as the majority implies,** there are some claims of ineffective assistance of trial counsel that may be resolved on direct appeal, then **new counsel representing an appellant on direct appeal** will be required **to raise every such arguable claim on direct appeal,** *Grant* **notwithstanding.** Otherwise, when a claim of trial counsel's ineffectiveness is raised for the first time in a PCRA petition it will be subject to a legitimate waiver argument for dismissal since "the petitioner could have raised it but failed to do so ... on appeal." 42 Pa.C.S.A. § 9544(b). The PCRA courts in the first instance, and this Court on appeal, will then be required to determine if the record on direct appeal was "adequate to effectively review [the] claims." PCRA counsel in every instance will again be required to layer the ineffective assistance of appellate counsel in order to avoid any possible PCRA waiver claim. That is exactly the situation which *Grant* intended to eliminate. *Grant*, 813 A.2d at 739. We will have turned a rule that was intended to curb such litigation into one that spawns it. We avoid such a result by applying what I believe is the clear dictate of *Grant:* dismiss claims of ineffective assistance of trial counsel that are raised for the first time on direct appeal.

*Ruiz*, at 99 (Graci, J. concurring) (emphasis added; footnote omitted); *Rosendary*, at 529 (Graci, J. concurring) (emphasis added; footnote omitted).

¶ 6 In context, then, it is clear that I agree with the majority that "*Grant* abrogates any requirement, implied or otherwise, that such claims [of ineffective assistance of trial counsel] be raised during direct review." Majority Op. at 36. I disagree, however, that "Grant *recommends* that we dismiss, without prejudice, claims of trial counsel's ineffectiveness on direct appeal ...." *Id.* (emphasis added). I believe that *Grant* **commands** such dismissal.

¶ 7 Secondly, since we can no longer resolve claims of ineffective assistance of trial counsel which are raised for the first time on direct appeal, I do not think we should comment further on any of Thornton's ineffectiveness claims. As I explained in *Ruiz:*

> The PCRA court is required to examine any properly pleaded claims of ineffective assistance in the first instance. We should do nothing to intrude on that function. It is not our role to issue advisory opinions. *Okkerse v. Howe,* [521 Pa. 509] 556 A.2d 827, 833 (Pa.1989) (advisory opinion is without legal effect); *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa.Commonwealth 1998) (citing *Okkerse* for the proposition that a judicial determination that is unnecessary to decide case is an "advisory opinion and has no legal effect").

*Id.* at 99–100 (Graci, J. concurring). Accordingly, I do not join footnote 4 of the majority opinion. Majority Op. at 36 n. 4. I leave it to the PCRA court to determine, in the first instance and on a proper record, if there was probable cause to seize Lee's vehicle and whether trial counsel was ineffective in failing to file a motion to suppress. As the majority makes clear, as

this and Thornton's remaining claims are based on omissions, we have an inadequate record on which to address any of them. *Id.* at 36–37.

¶ 8 Accordingly, I join the opinion only to the extent it affirms Thornton's conviction. Since the majority properly applies the rule of *Grant,* as I understand it, I concur in the result.