J-S34004-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRIAN BIBBS | : | |
| | : | |
| Appellant | : | No. 908 WDA 2017 |

Appeal from the Judgment of Sentence May 22, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002809-2016

BEFORE: BOWES, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    FILED JULY 20, 2018

Derrian Bibbs appeals from the judgment of sentence of nine to twenty-three months imprisonment, followed by six years probation. We affirm.

The trial court offered the following summary of the underlying facts of this case.

> During the early morning hours of June 22, 2016, employees of a Pepsi bottling plant on Perry Highway noticed suspicious activity around the Pepsi plant and a neighboring church named the Triumphant Life Church. A Pepsi employee, Ronald Gilkinson, saw a vehicle in the plant's driveway around 4 AM on June 22. He approached the vehicle and made contact with a young lady, who[m] he asked to move the vehicle. He described the vehicle as a Ford Expedition or Jeep Cherokee with a broken out back window. Another Pepsi employee, Robert Welker, saw two individuals walking around the church next door, looking through windows and checking doors between 4:30 and 5:00 AM. Welker testified a third Pepsi employee stated he was going to call the Millcreek police.
>
> The Triumphant Life Church had an evening service planned for June 22. The first person to arrive was the principal of the

_____
* Retired Senior Judge assigned to the Superior Court.

school attached to the church, Michael Donch. He immediately observed broken glass, things out of place and items missing.

Gregory Buzzanco, a senior pastor at Triumphant Life Church, described a long list of items which were missing from the church after the June 22 burglary, including cameras, microphones, a tenor saxophone, DVDs, TVs, DVD players, and a computer. The value of the high-definition camera alone was in the thousands. The effect on the church's television and music ministries was substantial. Items of financial and sentimental value were taken. Donch had a very expensive tenor saxophone, originally his father's, stolen. Pastor Buzzanco's sister-in-law had a Bible stolen.

Pastor Buzzanco discussed three individuals coming to the church a few weeks before the burglary asking for help. He described the trio as one heavyset male, one thin male, and a heavyset female. They sat outside the church during a prayer meeting one evening saying they needed rest. Principal Donch recognized Appellant and his co-defendants from that interaction.

Detective-Lieutenant Donald Kucenski arrived at the scene the evening of June 22. He found tire marks in the grass beside the church. After speaking to Pastor Buzzanco, Detective Kucenski observed a broken window and blood in the area of it. A screen was removed from a door. There was also a door open which was not used by members of the church.

Subsequently a parishioner, Frank Michael DeFazio, was approached by a man named Steve Newman wanting to know if he was interested in buying television equipment. When DeFazio met with Newman to view the equipment, DeFazio recognized it as church property stolen during the June 22 burglary.

The police were able to locate a vehicle matching the description given by the Pepsi employee that had been impounded by the city due to an incident on June 22. The vehicle had a license plate on it that was not registered to that vehicle. Inside the vehicle were a parking ticket and court documents with Appellant's name on them. The parking ticket had an address for the 900 block of West 20th Street. The legal mail with Appellant's name on it had an address of 904 West 20th Street, Apartment 2. This led to an investigation of that address.

As part of a sting operation, officers entered Appellant's apartment that he was sharing with two others. His roommates were a large Caucasian male identified as Kenneth Bartella, and a shorter, heavy-set female named Jennifer Edwards. Appellant is a thin male. These physical descriptions generally matched the three people who were at the church seeking help before the burglary. Police also found several items stolen from Triumphant Life Church. Among them was a Bible with the name Jennifer Buzzanco on the inside. There were also other Bibles, a VCR, a laptop, and keys that belonged to the church.

On July 22, Appellant spoke with Detective Kucenski. In a video-taped interview, Appellant admitted to being in the vehicle the night of the church burglary and moving it when asked by the Pepsi employee. After further questioning, Appellant admitted he carried various items from inside the church into his vehicle.

At trial, Appellant refuted much of his video-taped statement, claiming he was scared and nervous at the time of the statement. Nonetheless, the jury could determine what to accept as credible in his video statement and/or his trial testimony.

In his trial testimony, Appellant described Kenneth Bartella as the uncle of the mother of his son. Mr. Bartella and his girlfriend were staying with Appellant at 904 West 20th Street. Appellant testified Bartella woke him up the night of June 21 with a bloody hand. After helping wrap up the hand, Appellant joined Bartella and Edwards in the Jeep and Appellant drove them to the church. Appellant claims he did not know where he was going nor what was happening. Appellant stated he and Edwards stayed in the vehicle at first, but after five minutes, Appellant went to go look for Bartella. Appellant said he held a bag but did not go into the church and carry stuff out, in contradiction to what he said in the video. At all times relevant to the crime, Appellant claims he did not know what Bartella was doing. On cross-examination, Appellant explained the timeline by saying he was only in the vehicle around midnight and Bartella must have returned later that night when the Pepsi employees saw the vehicle.

Trial Court Opinion, 8/21/17, at 1-4 (citations omitted).

Upon this evidence, a jury found Appellant guilty of burglary, conspiracy, theft by unlawful taking, and criminal mischief. Appellant was sentenced as

- 3 -

indicated above on May 22, 2017. Appellant did not file a post-sentence motion, but filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents this Court with the same three questions raised in his 1925(b) statement: (1) whether the evidence was insufficient to sustain his convictions; (2) whether the trial court violated Appellant's rights under the federal and state constitutions, as well as the Rules of Criminal Procedure, in declining Appellant's mid-trial request to enter plea negotiations; and (3) whether Appellant's sentence is manifestly excessive and unreasonable. Appellant's brief at 3.

We begin with Appellant's sufficiency claim, for which our standard and scope of review are de novo and plenary, respectively. Commonwealth v. Williams, 176 A.3d 298, 305 (Pa.Super. 2017). A conviction is based upon sufficient evidence if "the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." Id. at 305-06. The Commonwealth may sustain its burden through wholly circumstantial evidence, and need not preclude all possibility of innocence. Id. at 306. "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." Id. "Moreover,

as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder." Id.

Appellant was convicted of conspiracy to commit burglary, burglary, theft by unlawful taking, and criminal mischief. The following explains the requirements and effect of proof of a criminal conspiracy.

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. The essence of a criminal conspiracy . . . is the agreement made between the co-conspirators.
>
> [M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

Commonwealth v. Murphy, 844 A.2d 1228, 1238 (Pa. 2004) (citations and quotation marks omitted).

In challenging his convictions, Appellant contends that he was just in the wrong place at the wrong time, that he was merely found guilty based upon his association with Bartella and Edwards, and that the Commonwealth

failed to offer any forensic evidence, video surveillance, or direct testimony to connect Appellant to the criminal activities of Bartella and Edwards. Appellant's brief at 17-18. We disagree.

Appellant concedes that the Commonwealth produced evidence that Bartella, Edwards, "and perhaps" Appellant went to the church a few weeks before the burglary, that Appellant knew that his co-defendants planned to burglarize the church and were in the process of burglarizing the church on the night in question, and that Appellant knew that Bartella and Edwards kept items stolen from the church in the apartment where all three of them were living. Id. at 16-17. The Commonwealth also offered evidence that Appellant's vehicle was the one utilized for the crimes. Most importantly, in his statement to police that was played at trial, Appellant acknowledges that he was at the church with Bartella and Edwards that night, and that he helped them remove items from the church, load them into his vehicle, and store them at his residence. See Trial Court Opinion, 8/21/17, at 7-8.[1]

Upon this record, we readily conclude that the jury was able to find beyond a reasonable doubt that Appellant conspired with Bartella and Edwards to burglarize the church. See, e.g., Commonwealth v. Garcia, 847 A.2d 67, 71 (Pa.Super. 2004) (holding circumstantial evidence was sufficient to

---

[1] Neither the video recording of Appellant's statement played to the jury nor a transcript thereof is included in the certified record. However, our review is not hampered by its absence, as Appellant does not dispute the trial court's representation of its contents.

- 6 -

prove agreement to commit robbery where the appellant drove the car and stopped on co-defendant's order; both the appellant and his co-defendant participated in the robbery of the victim, during which the victim was shot; the appellant drove with his co-defendant for an extended time after the shooting; and the appellant attempted to dispose of the murder weapon); Commonwealth v. Diehl, 585 A.2d 1112, 1114 (Pa.Super. 1991) (finding evidence sufficient for jury to infer appellant was part of conspiracy where appellant was present when co-defendants discussed robbery plan, drove them to and from the store that was robbed, and housed stolen merchandise in his car).

Therefore, because the evidence was sufficient to sustain Appellant's conspiracy conviction, it matters not whether it was Appellant or one of his co-conspirators who perpetrated the additional criminal actions taken in furtherance of the conspiracy. In this instance, those additional actions are: entry into a building that is not adapted for overnight accommodations for the purpose of committing a crime therein when no person is present; the unlawful taking of the movable property of another with the intent to deprive the owner thereof; and the intentional damage of the property of another. See, respectively, 18 Pa.C.S. §§ 3502(a)(4) (burglary), 3921(a) (theft by unlawful taking), and 3304(a)(1) (criminal mischief).

The Commonwealth's evidence discussed above unquestionably showed that at least one of the co-conspirators broke a window to get into the church,

which was an unoccupied building not adapted for overnight accommodations, for the purpose of taking and carting away property located within that did not belong to them, and in fact depriving rightful owners of their property. Whether Appellant committed some, none, or all of those actions, he is guilty just the same because the crimes were committed in furtherance of the conspiracy. See, e.g., Commonwealth v. Ruiz, 819 A.2d 92, 98 (Pa.Super. 2003) (holding that, because a conspiracy was proven, the evidence was sufficient to find the appellant guilty of the crimes committed by his co-conspirator). Thus, Appellant's sufficiency challenges fail.

Appellant also contends that the trial court erred in refusing to allow him to enter a negotiated plea during trial.[2] Appellant's brief at 11. Appellant claims that the trial court's ruling "violated his rights under the Constitutions of the United States and the Commonwealth of Pennsylvania and violated Criminal Rule of [Procedure] 590(B)." Id.

The record reveals that, after the Commonwealth rested on the second day of trial, Appellant's counsel requested a sidebar at which he said "Your Honor, I approached [the ADA] with the possibility of if we could resolve the

_____

[2] In his brief, Appellant also argues that the trial court "in essence" rejected his second ARD application by calling the case for trial, rather than granting a request to delay trial, to give the District Attorney's Office time to consider the application. Appellant's brief at 11, 14-15. These claims were not specified in Appellant's 1925(b) statement, and were not addressed by the trial court. Accordingly, they are not properly before us. See, e.g., Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005) ("Any issues not raised in a Pa.R.A.P.1925(b) statement will be deemed waived.").

trial, possibly with a plea.  I don't know if you would entertain that."  N.T. Trial, 4/5/17, at 110.  The trial court responded "We've gone this far.  Let's go."  Id.  The court then asked if Appellant had evidence to offer, and counsel asked for a ten-minute recess, which the court denied, indicating that a recess had already been taken.  Id.  Appellant then testified in his defense.

Assuming arguendo that this discussion preserved the issue for our review, the trial court aptly explained its lack of merit as follows.

> [Appellant] does not have a constitutional right to [a] plea bargain offer or disposition.  Commonwealth v. McElroy, 665 A.2d 813 (Pa.Super. 1995). . . .  The Commonwealth is not under any legal obligation to offer a plea bargain to a defendant.  See, e.g., Commonwealth v. Stafford, 416 A.2d 570, 573 (Pa.Super. 1979).  Courts are not required to accept plea agreements agreed upon between the Commonwealth and defendant.  See Pa.R.Crim.P. 590(A)(3).
>
> At the close of the Commonwealth's case, Appellant's counsel notified the court that he approached the District Attorney with the possibility of entering a negotiated plea and asked if the court would entertain such a resolution.  However, there is no evidence a plea offer was available or that the Commonwealth was willing to tender one.
>
> Appellant was arrested on these charges on October 20, 2016.  Appellant was represented by counsel and had months to enter a negotiated plea before his trial on April 5, 2017.  Appellant exercised his right to a jury trial and put the Commonwealth to the burden of presenting a case in chief to the jury.  The court was not required to stop the trial after the Commonwealth's case and allow a plea bargain simply because Appellant requested a plea offer from the Commonwealth.

Trial Court Opinion, 8/21/17, at 5 (unnecessary capitalization and some citations omitted).  As Appellant does not specify what constitutional provisions are implicated, let alone offer authority to support his position that

he had a right to commence plea negotiations after the Commonwealth put on its case, we discern no constitutional basis for disturbing the trial court's ruling.

Appellant also contends that Pa.R.Crim.P. 590, which governs pleas and plea agreements, required the trial court to conduct an inquiry on the record before denying his request. Appellant's brief at 13-14. Specifically, Appellant points to the following provisions of the Rule.

> (A) Generally
>
> . . . .
>
> (3) The judge may refuse to accept a plea of guilty or nolo contendere, and shall not accept it unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.
>
> (B) Plea agreements.
>
> (1) At any time prior to the verdict, when counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement, unless the judge orders, for good cause shown and with the consent of the defendant, counsel for the defendant, and the attorney for the Commonwealth, that specific conditions in the agreement be placed on the record in camera and the record sealed.
>
> (2) The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of nolo contendere is based.

Pa.R.Crim.P. 590(A), (B).

- 10 -

From its plain language, this Rule has no relevance to the instant case. Subsection (A)(3) requires no inquiry of a defendant if it decides to reject his or her plea; rather, it requires the judge to conduct an inquiry into the defendant's understanding before it may accept the plea. Likewise, subsection (B) requires the court to ensure that a defendant's decision to enter a plea agreement is voluntary after the Commonwealth and defendant represent on the record that they reached an agreement. When, as in the instant case, there is no representation that an agreement has been reached, the trial court's duty to undertake an inquiry is not triggered. Accordingly, we find no merit in Appellant's issue concerning his mid-trial request to initiate plea negotiations with the Commonwealth.

Appellant's final issue is a challenge to the discretionary aspects of his sentence. The following principles apply to our review.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

Although he filed a timely notice of appeal and included a Rule 2119(f) statement in his brief, Appellant did not object to the discretionary aspects of his sentence at the sentencing hearing[3] or in a post-sentence motion.[4] Accordingly, he has not preserved the issue for our review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2018

_____

[3] Although the language used in the trial court's opinion suggests that Appellant made an argument at the sentencing hearing about the length of the sentence imposed, see Trial Court Opinion, 8/21/17, at 9 ("Appellant argued the court erred at the time of sentencing . . . ."), the nine-page sentencing transcript reveals no comments from Appellant or his counsel after the sentence was announced. See N.T., Sentencing, 5/22/17, at 8-9.

[4] In his brief, Appellant avers that he preserved his issue in a post-sentence motion. Appellant's brief at 21. However, no post-sentence motion was entered on the docket or included in the certified record. Further, Appellant filed his notice of appeal on the thirtieth day after he was sentenced, which is the proper time to appeal when no post-sentence motion is filed, and is not the proper timing for an appeal after the filing of a timely post-sentence motion. Compare Pa.R.Crim.P. 720(A)(1) with Pa.R.Crim.P. 720(A)(2). We assume Appellant's statement to the contrary in his brief was made mistakenly, rather than with intent to mislead this Court.