J-S28041-16

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LADALE PACE, | |
| Appellant | No. 3570 EDA 2014 |

Appeal from the Judgment of Sentence July 17, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0005467-2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 10, 2016**

Appellant, Ladale Pace, appeals from the judgment of sentence imposed following his conviction by a jury of murder of the second degree; robbery; burglary; criminal conspiracy to commit murder, robbery, and burglary; and violations of the Uniform Firearms Act.[1,2] We affirm.

We take the following facts from the trial court opinion.

> On February 21, 2012, a white Chrysler 300 followed a red Mitsubishi Montero owned by the [d]ecedent, Julio Cesar Hernandez (Hernandez), southbound into the shared driveway

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 3502(a), 903(c), 6106(a)(1), and 6108, respectively.

[2] This appeal only concerns docket number CP-51-CR-0005467-2013. The jury also convicted Appellant of possession of a controlled substance at docket number CP-51-CR-0005464-2013.

behind Hernandez's home, located at 3900 Palmetto Street in the City and County of Philadelphia. Two surveillance cameras affixed to the rear of 3910 Palmetto Street showed the two (2) vehicles enter the driveway, and captured the Chrysler parking along the rear of 3910 at 11:19 A.M. At 11:24 A.M., Appellant, dressed in a dark hoodie, dark jeans and black shoes[,] entered the rear of the Chrysler on the driver's side, remained for approximately [thirty] seconds, then exited the Chrysler and walked south outside of the camera view.

Appellant used Hernandez's keys to enter Hernandez's home, where he went upstairs to Hernandez's bedroom, and searched the drawers of Hernandez's dresser. Juanna Perez (Perez)[,] the wife of Hernandez, was in the kitchen with the couple's [nineteen]-month-old child when she heard the familiar sound of Hernandez's keys. . . . Perez noticed a male standing outside of the door with his hands in his pockets. Perez began calling for her husband and saw Appellant on the stairs holding a gun. Appellant ran out of the house and turned left, and the man who was outside ran away to the right.

At approximately 11:27 A.M., the unidentified driver of the Chrysler exited the car and ran southbound towards Hernandez's home. Less than [thirty] seconds later, the driver, dressed in a dark jacket and dark pants[,] ran northbound down the middle of the driveway with a gun pointed towards the activity outside of the camera frame. While the unidentified driver crouched behind a parked car, he pointed a gun at Hernandez who was running north through the driveway. At approximately 11:28 A.M.[,] Hernandez fell outside of the camera frame, and the unidentified male entered the driver's side of the Chrysler.

Jorge Gonzalez (Gonzalez), who lived on I Street, was going to his van in the same shared driveway when he heard gunshots. Gonzalez was [ninety] feet away when he saw [] Smith approach Hernandez who was on the ground. Gonzalez witnessed [] Smith shoot Hernandez in the back of the head. [] Smith entered the front passenger side of the Chrysler and the car drove south. . . .

\* \* \*

At 11:29 A.M., two (2) security cameras affixed to the rear of J.J.'s Café, located at 1065 East Erie Avenue, showed the Chrysler enter the shared driveway between Elsinore Street and J Street and pull into a side street out of camera view. [] Smith

and the unidentified driver subsequently walked into camera view, and walked toward J Street. Appellant then entered the shared driveway behind J.J[.]'s Café from the same direction that the Chrysler had entered, and discarded a roll of duct tape in a trash pile as he walked toward J Street. The unidentified driver, who had already crossed J Street with [] Smith, doubled back toward Appellant and spoke with him. Appellant then walked back down the shared driveway and went into the side street where the Chrysler was last seen.

At the scene of the crime, two (2) racks of heroin were found in the armrest of the Mitsubishi, and a Kyocera Cricket cell phone was found on the floor of the front passenger side of the vehicle. . . . On March 15, 2012, police arrested Appellant in a white Chrysler 300 . . . .

A warrant executed for Appellant's former cell phone number revealed that it was used to communicate with [] Smith's Kyocera phone multiple times in the days prior to February 21, 2012, and cellular analysis showed Appellant's phone was in geographic proximity to Hernandez's home around the time of the incident. On April 13, 2012, Perez identified Appellant from a photo array, and subsequently identified him at a line up on April 25, 2013.

(Trial Court Opinion, 6/11/15, at 2-5) (quotation marks and footnote omitted).

On July 7, 2014, Appellant and his co-defendant Smith proceeded to a jury trial. On July 17, 2014, the jury convicted Appellant of the above charges. On the same day, the court sentenced Appellant to mandatory life imprisonment for the murder, with no further penalty assessed for the other charges. (*See id.* at 1). On July 22, 2014, Appellant filed a timely post-

sentence motion, which was deemed denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a). This timely appeal followed.[3]

Appellant raises three questions for our review:

I. Is [Appellant] entitled to an arrest of judgment where, as here, the evidence is insufficient to sustain the verdict of murder in the second degree?

II. Is [Appellant] entitled to a new trial on the charge of murder in the second degree where, as here, the greater weight of the evidence does not support the verdict?

III. Is [Appellant] entitled to a new trial as the result of prosecutorial misconduct where the prosecutor engaged in giving personal opinion during closing argument where he claimed that surveillance video depicted a person looking like the co-defendant?

(Appellant's Brief, at 3) (unnecessary capitalization omitted).

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction of murder of the second degree, criminal conspiracy to commit robbery, and criminal conspiracy to commit burglary.[4] (*See* Appellant's Brief, at 12-23). Specifically, although Appellant concedes that the evidence was sufficient to prove a felony, he argues the

_____

[3] Appellant filed his notice of appeal on December 16, 2014. Pursuant to court order, Appellant filed a concise statement of errors complained of on appeal on January 12, 2015. *See* Pa.R.A.P. 1925(b). The trial court filed its opinion on June 11, 2015. *See* Pa.R.A.P. 1925(a).

[4] Appellant apparently neglected to challenge the sufficiency of the evidence to support his conviction of criminal conspiracy to commit murder. (*See* Appellant's Brief, at 12-23).

Commonwealth failed to prove that the homicide was committed in furtherance of the felony. (*See id.* at 18). We disagree.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014-15 (Pa. Super. 2002), *appeal denied*, 805 A.2d 521 (Pa. 2002). "Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013), *appeal denied*, 95 A.3d 277 (Pa. 2014).

"Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony." *Lambert*, *supra* at 1015 (citing 18 Pa.C.S.A § 2502(b)). The perpetration of a felony is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or

flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." *Id.* (citing 18 Pa.C.S.A § 2502(d)).

> The statute defining second degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. . . . It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

*Id.* at 1023 (citations omitted).

Here, in explaining why it found that the Commonwealth had presented sufficient evidence to prove the elements of murder of the second degree, the court reasoned:

> In the instant case, the Commonwealth presented evidence through the testimony of its witnesses and surveillance video to identify the Appellant and to establish that he and the other males conspired to commit the crimes of burglary, robbery and murder. Appellant used [Hernandez's] keys to open the front door of Hernandez's home, a structure, while Perez and her son were inside. (*See* N.T. Trial, 7/09/14, at 112-15). Perez heard footsteps upstairs in her bedroom and she later observed an opened dresser drawer in the bedroom. (*See id.* at 112-13, 124). She also saw Appellant descend the stairs in her home before he ran away with another male who had waited outside. (*See id.* at 112-15). Appellant's actions at the time of the incident were sufficient to show that when Appellant entered Hernandez's home, he intended to unlawfully take or exercise unlawful control over the movable property of Hernandez, actions that would constitute the crime of theft. The elements of robbery were satisfied when Appellant, Smith, and the unidentified driver inflicted serious bodily injury on Hernandez while trying to commit a theft. The totality of the circumstances in the instant case were sufficiently proximate to the crime of

theft and were a series of natural acts required for its commission.

Appellant intentionally aided [] Smith and the unidentified driver in facilitating the commission of burglary and robbery, thus although he did not shoot Hernandez, he is legally accountable for the death of Hernandez. [The trial c]ourt finds that viewed in a light most favorable to the Commonwealth, there was sufficient evidence to establish the Appellant as the perpetrator of burglary, robbery, and second degree murder.

(Trial Ct. Op., at 8-9) (citation formatting and some citations provided, unnecessary capitalization and footnote omitted).

After our independent review of the record, we agree with the trial court's conclusion that the Commonwealth produced sufficient evidence to prove beyond a reasonable doubt all elements of murder of the second degree where Appellant took part in a conspiracy to commit burglary and robbery and one of his co-conspirators killed the decedent, Hernandez, in furtherance of those felonies. *See Harden*, *supra* at 111; *Lambert*, *supra* at 1023.

Furthermore, we note that although Appellant also argued that the evidence was insufficient to support his conviction of conspiracy to commit burglary and robbery, his statement of questions presented frames the issue as only challenging the sufficiency of the evidence to support his conviction of murder of the second degree. (*See* Appellant's Brief, at 3, 12-23). Accordingly, he waived his challenge to his conspiracy conviction. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Moreover, it would not merit relief.

> To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

*Commonwealth v. Ruiz*, 819 A.2d 92, 97 (Pa. Super. 2003) (citation omitted). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities."

*Id.*

After our independent review of the record, we would agree with the trial court's conclusion that the Commonwealth produced sufficient evidence to prove the elements of criminal conspiracy where the evidence demonstrated that Appellant communicated with his co-conspirators prior to, during, and after the incident and Appellant and his co-conspirators took overt steps in furtherance of the conspiracy by entering the victim's home and then inflicting serious bodily injury on the victim. (*See* Trial Ct. Op., at 10); *Harden*, *supra* at 111; *Ruiz*, *supra* at 97. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the weight of the evidence does not support his conviction of murder in the second degree. (*See* Appellant's Brief, at 24-25). However, Appellant did not properly raise his weight claim before the trial court. Appellant's post-sentence motion, which merely provided "the jury's verdict was against the weight of the evidence"

(Post Sentence Motion, 7/22/14, at 1), and statement of errors complained of on appeal which states, "[t]he jury's verdict is against the weight of the evidence" (Rule 1925(b) Statement, 1/12/15, at 1), were too vague to permit meaningful review. *See* Pa.R.A.P. 1925(b).

> The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Pa.R.A.P. 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process. When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Commonwealth v. Lemon*, 804 A.2d 34, 36-37 (Pa. Super. 2002) (citations omitted); *see also Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002) (concluding weight of the evidence issues were too vague to permit review where in his Pa.R.A.P. 1925(b) statement, appellant merely stated "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.").

Here, we agree with the trial court's conclusion that Appellant's weight of the evidence challenge lacked specificity to enable meaningful review by the trial court because it "[did] not state how the weight of evidence was contrary to the verdict." (Trial Ct. Op., at 6). Accordingly, Appellant's

second issue is waived.  ***See Lemon***, ***supra*** at 36-37.  Moreover, Appellant's claim would not merit review.

"A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Giordano***, 121 A.3d 998, 1007 (Pa. Super. 2015), *appeal denied*, 131 A.3d 490 (Pa. 2016).  "It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."  ***Id.*** "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence."  ***Id.***

Here, we conclude that the trial court did not abuse its discretion when it denied Appellant's post-sentence motion because the jury's guilty verdict did not shock the conscience.  ***See id.***  Accordingly, Appellant's second issue would not merit relief.

In his third issue, Appellant claims that the trial court erred by not granting his co-defendant's motion for a mistrial because the prosecutor opined, during his closing argument, that a still frame photo from a surveillance video looked like the co-defendant.  (***See*** Appellant's Brief, at 25-26).  However, Appellant's brief includes neither citation to the record, or

legal authority in support of his proposition.[5] ***See*** Pa.R.A.P. 2119(a)—(c). Nor has he provided any authority to show that he has standing to challenge the prosecutor's comments, which were aimed at his co-defendant. ***See Commonwealth v. McCrae***, 832 A.2d 1026, 1034 (Pa. 2003), *cert. denied*, 543 U.S. 822 (2004) ("A party generally cannot vicariously litigate the claims of another party."). Accordingly, Appellant has waived his third issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016

---

[5] Not only does Appellant fail to cite to the record, he also has failed to include a copy of the transcript of closing argument. (***See*** N.T. Trial, 7/15/14, at 59 ("Closing arguments not transcribed.")); ***see also*** Pa.R.A.P. 1921, note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.").