443 A.2d 338

**COMMONWEALTH of Pennsylvania**

v.

**Walter WILLIAMS, a/k/a Charles Walker, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed March 19, 1982.

Mitchell Scott Strutin, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Walter Williams, also known as Charles Walker, appeals from the lower court's denial of his request for

relief under the Post Conviction Hearing Act.[1] On appeal, appellant contends *inter alia* that his counsel at trial was ineffective for stipulating to the testimony of the complaining witness and for failing to insure that an on-the-record colloquy was held by the trial court before the stipulation was accepted. We agree, and reverse the judgment of sentence and remand for a new trial.[2]

Before addressing the merits of appellant's claim, we must examine the question of waiver. The facts which are necessary to a resolution of the waiver question are as follows:

On March 26, 1975, appellant was tried before a judge, sitting without a jury, and found guilty of theft by unlawful taking or disposition,[3] receiving stolen property,[4] and unauthorized use of an automobile.[5] Post-verdict motions were denied, and appellant was sentenced to concurrent terms of two and three years of non-reporting probation. During this stage of the proceedings, appellant was represented by the Public Defender's Office of Philadelphia County.

On May 7, 1976, appellant was arrested and charged with forgery,[6] and other related offenses.[7] He was found guilty of receiving stolen property and sentenced to a term of one year probation.

Again, appellant was arrested and charged with eight counts of forgery and theft by deception.[8] Appellant en-

1. The Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.* as amended, 19 P.S. § 1180–1 *et seq.*

2. In view of our disposition of the instant appeal, we need not address the other ineffectiveness issues raised by appellant.

3. 18 Pa.C.S.A. § 3921.

4. 18 Pa.C.S.A. § 3925.

5. 18 Pa.C.S.A. § 3928.

6. 18 Pa.C.S.A. § 4101.

7. Appellant also was charged with theft and receiving stolen property.

8. 18 Pa.C.S.A. § 3922.

tered pleas of guilty to these charges and was sentenced to terms of one to two years imprisonment.

Because the two convictions referred to above constituted violations of appellant's probation, his probation was revoked, and appellant was sentenced to a consecutive term of imprisonment of not less than three nor more than seven years in prison. No sentence was imposed on the unauthorized operation conviction because it merged with the theft conviction. At the probation revocation proceedings, appellant was represented by private counsel. A direct appeal was filed *pro se* from the judgment of sentence imposed; however, the appeal was discontinued on the advice of counsel, a public defender from Philadelphia County.

 To begin with, the merits of an issue cannot be addressed in a post-conviction proceeding where:

> "(1) the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and
>
> (2) the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue." 19 P.S. § 1180–4(b). (Supp.1981–82).

In this context, § 1180–4(c) provides that:

> "[t]here is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

We also have recognized that the

> "knowing failure to appeal from [an] *order of probation* constitutes a waiver of the right to challenge the validity of the conviction upon which the probation order is based." *Commonwealth v. Gilmore*, 465 Pa. 202, 205, 348 A.2d 425, 427 (1975) (emphasis added). Accord, *Commonwealth v. Nance*, 290 Pa.Super. 312, 316, 434 A.2d 769, 771 (1981).

Although the trial court stated that the issue appellant raised concerning the stipulation was meritorious, the court denied relief because "the defendant fail[ed] to take a direct appeal and has offered no evidence to rebute [sic] the presumption that his failure to raise the issue on appeal constituted a knowing and intelligent waiver of such right." Trial Court Opinion at 4. We must disagree with the trial court because:

"[w]hen a defendant fails on direct appeal to raise [the] ineffectiveness of trial counsel, *the issue of ineffectiveness is not waived if his trial counsel was or would have been his appellate counsel." Commonwealth v. Davis*, 267 Pa. Super. 118, 121, 406 A.2d 547, 548 (1979) (Emphasis added) (Citations omitted). Accord *Commonwealth v. Mabie*, 467 Pa. 464, 471, 359 A.2d 369, 371–372 (1976).

In a similar case, *Commonwealth v. Mabie, id.*, we applied the above stated principle and explained further:

"[h]ere, since trial counsel, who Mabie [the defendant] contends was ineffective, would have been required to *file post-verdict motions and a direct appeal* on the issue of his own ineffectiveness *were such procedures initiated, it is similarly unrealistic to expect counsel to file motions and/or an appeal challenging his own ineffectiveness.* Therefore, where a PCHA petition alleges as grounds for relief that trial counsel, with whom petitioner consulted concerning the feasibility of appeal, has been ineffective and where trial counsel has not taken a direct appeal on behalf of the petitioner, the question of whether trial counsel was ineffective has not been waived for purposes of review in a PCHA proceeding." (Footnote omitted) (Emphasis added).

In the instant case, the testimony which was elicited at the PCHA proceedings concerned whether appellant had requested his trial attorney, a public defender, to appeal the case. Thus, it is clear that appellant's "trial counsel . . . would have been his appellate counsel", *id.*, and for that

reason, appellant's failure to appeal precludes a finding of waiver.[9]

■ Interestingly enough, the prosecution concedes that "this is the first opportunity [that the appellant] has had to advance" a claim of trial counsel's ineffectiveness (see, Brief for the Prosecution at 9 ftn. 9); however, the prosecution contends that the question concerning the stipulation, "although couched in terms of ineffective assistance of counsel," is not a true ineffectiveness claim and is "really [a claim] that he should have been colloquy by the trial." *Id.* at 3–4. We must reject the prosecution's contention.

In his brief, appellant posed the following question: "Was trial counsel ineffective for:

a. Stipulating to the testimony of the complaining witness and failing to insure that an on-the-record colloquy was held by the Court before acceptance of the stipulation." Brief for Appellant at 2.

Thus, there is no doubt that appellant's claim is an attack on counsel's stewardship at trial, and, hence, contrary to the prosecution's contention, is a true ineffectiveness claim.

■ Additionally, even though appellant was represented at the probation revocation hearing by a private attorney, who was other than his trial counsel, we have said that "[a] probation revocation hearing is not an appeal within the meaning of *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d

---

9. The trial court's conclusion that appellant knowingly and intelligently waived his right to appeal was based also on the fact that "the defendant did not raise the issue of ineffective assistance of counsel or the right to confront a witness until his probation was revoked approximately two years after it was imposed." Trial Court Opinion at 5. We cannot agree that the length of time between the original imposition of probation and the attack on counsel's ineffectiveness is a factor to be considered in our analysis. We have said that the "failure to raise a claim of incompetency [will not be viewed] as a waiver where an individual in the subsequent proceeding is represented by the same counsel or one of his associates." *Commonwealth v. Via*, 455 Pa. 373, 377, 316 A.2d 895, 898 (1974). See e.g., *Commonwealth v. Nance*, 290 Pa.Super. at 317, 434 A.2d at 770 (1981) (where appellant waited more than three years after entering a plea of guilty to attack trial counsel's ineffectiveness, no waiver found where the defendant was represented throughout by the Public Defender's Office).

435 (1975)] and therefore not a *proper forum for challenging the validity of the [conviction] upon which the* probation is based." *Commonwealth v. Eagle,* 248 Pa.Super. 267, 271, 375 A.2d 90, 92 (1977) (Emphasis added). We note also that appellant's notice of appeal from the judgment of sentence imposed following the revocation of probation was filed *pro se* and was discontinued upon the advice of the Public Defender. Under these circumstances, the withdrawal of the appeal by the Public Defender, whose ineffectiveness would have been challenged, does not waive the issue. See *Commonwealth v. Mabie,* supra. Therefore, since the PCHA stage was the "earliest stage in the proceedings at which the counsel whose ineffectiveness is being challenged no longer represent[ed] the [appellant]", the issue of trial counsel's ineffectiveness has been preserved for appellate review. See *Commonwealth v. Hubbard,* 472 Pa. 259, 276 n. 6, 372 A.2d 687, 695 n. 6 (1977).

■ Turning now to the merits of appellant's ineffectiveness argument, we must, when analyzing appellant's claim, apply a two step approach. The first step is to ascertain whether the claim counsel abandoned is of arguable merit. See *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). However, even then, if the abandoned claim is of arguable merit, a defendant is not entitled automatically to relief. Rather, "a finding of ineffectiveness could never be made unless we conclude[ ] that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth v. Hubbard,* 472 Pa. 259, 277–8, 372 A.2d 687, 695–6 (1977).

■ With this framework in mind, the record of the instant case reveals the following:

At trial, appellant's counsel stipulated that if the owner of the automobile, William Brown, was called to testify, he would have testified as follows:

"that he reported his automobile stolen early in the morning of November 2nd, 1974; that he gave no one permission to operate the automobile, and that he did not know

anybody by the name of Charles Walker [, the appellant]; that he reported his automobile stolen on the morning of 11/2/74. That would be the stipulation entered into and offered by and between the defense and the Commonwealth." (Trial Transcript, 3/26/75 at 12).

Appellant contends that because trial counsel entered into the stipulation and also because counsel failed to object to the trial court's failure to conduct an on-the-record colloquy as required by *Commonwealth v. Davis*, 457 Pa. 194, 322 A.2d 103 (1974), a reversal is required. We agree.

In *Davis*:

"our Supreme Court recognized that testimony entered by counsel's stipulation may be so damaging that admission of the stipulation at trial must be surrounded by safeguards similar to those attending the entry of a guilty plea. There, it was stipulated that the complaining witness, if present at trial, would have testified that the defendant was one of two men who had robbed him at gunpoint. The Court concluded that counsel's stipulation to this testimony placing his client at the scene of the crime and naming him as a participant therein was the equivalent to an admission of guilt by the defendant, despite his plea of not guilty. By stipulating to the testimony that would have been offered by the complaining witness, *appellant gave up the opportunity to cross-examine that witness and to attempt to discredit his incriminating testimony.* Under the circumstances of the case the stipulation made a not guilty verdict highly unlikely. Therefore, an on-record colloquy, demonstrating defendant's understanding of the consequences of the stipulations, and his consent thereto, was deemed necessary." *Commonwealth v. Bridell*, 252 Pa.Super. 602, 605, 384 A.2d 942, 943, 944 (1978) (Emphasis added).

Thus, the test to be applied, "essentially, is whether the stipulation in question makes the outcome [of the trial] a foregone conclusion.' *Commonwealth v. Davis*, [457 Pa.] at 197, 322 A.2d at 105. See *Julian v. United States*, 236 F.2d 155 (6th Cir. 1956)." *Id.* As the trial court so aptly stated:

"The *Davis* case is clearly applicable to the stipulation in the instant case for the stipulation regarding ownership and non-permission was, in and of itself, sufficient to enable the fact-finder to find the defendant guilty." Trial Court Opinion at 4.

Needless to say, the issue trial counsel abandoned was of arguable merit since "by stipulating to the testimony that would have been offered by the complaining witness [, William Brown,] appellant gave up the opportunity to cross-examine that witness and to attempt to discredit his incriminating testimony." *Commonwealth v. Bridell*, 252 Pa.Super. at 605, 384 A.2d at 944. Accordingly, the stipulation entered into by counsel made "the outcome [of the trial] a foregone conclusion". *Id.*

At the PCHA hearing, trial counsel testified concerning his reasonable basis for entering into the stipulation as follows:

"[The Prosecution, Charles Fisher]

Q. Based on the Notes of Testimony and what I have shown you do you recall the trial involving Mr. Walker?

[Trial Counsel, John Kelly]

A. I recall going to trial with Mr. Walker and I recall the circumstances of the trial. I do not recall the exact things that happened at the trial.

Q. Do you recall entering into a stipulation as to ownership and non-permission of a certain automobile?

A. I do not recall entering into a stipulation.

Q. Do you recall any discussion with Mr. Williams concerning that stipulation?

A. *I do not recall any conversation.*

Q. Okay. Was it your practice to enter into a stipulation as to ownership and non-permission or any other type of stipulation without consulting first with the defendant?

A. *The practice would be to consult with the client.*

Q. Do you recall Mr. Williams asking you during the course of this trial or telling you that he wanted a jury trial and not a waiver trial?

A. *I do not recall that.*

Q. Do you recall Mr. Williams ever indicating to you that he wanted certain witnesses *in Court that were not in Court*?

A. *I don't recall that but from a review of the Notes there is something in the Notes to that effect.*

MR. FISHER: Your Honor, if I may show Mr. Kelly the Notes, page 52 of the Notes of Testimony.

THE COURT: Certainly.

Q. Mr. Kelly, on that page there is a statement made to you by the Court concerning the complaining witness. Could you read that, please?

A. By the complaining witness?

Q. No, a statement by you to the Court.

A. I see. Yes, about half-way down on page 52: "MR. KELLY: *I would ask at this time to ask the complaining witness to come in. I would be doing an injustice and be remiss if I didn't question him."*

Q. Do you recall the circumstances surrounding that request?

A. *I just recall vaguely and I couldn't honestly say that I would have a total recollection of it, but there is some discussion with the client at that time."*

(PCHA Hearing Transcript at 37–38) (Emphasis added).

Although trial counsel's practice of not entering into a stipulation without the client's consent may be probative of counsel's action on a given occasion, see *Commonwealth v. Waters*, 441 Pa. 511, 273 A.2d 329, (1970), counsel in the instant case did not recall whether appellant had indicated to him that he had wanted certain witnesses in the courtroom and had only a vague recollection of his late request of record to question the complaining witness. Under these circumstances, counsel's practice of not entering into a stipulation without the client's consent is not conclusive of counsel's performance in this case. Rather, counsel's stewardship must be examined in the context of whether the "alternatives not chosen by counsel offered a potential for success substantially greater than the tactics actually utilized."

*Commonwealth v. Hubbard,* 472 Pa. at 277, 372 A.2d at 695. Our review of the record fails to uncover a reasonable basis for counsel's "strategy" of inaction.

First of all, appellant's defense was that he had permission to use the complaining witness's automobile. The only witness called by defense was the appellant.

The prosecution's case consisted of the combined testimony of two police officers who testified that appellant was seen driving William Brown's automobile at 2:30 A.M. on November 3, 1974. (N.T. 13). The police stopped the car, which was driven by appellant, and he produced an owner's card that belonged to William Brown. (N.T. 14). Later, William Brown was questioned by police. He told them that "no one had permission to take the car." (N.T. 17). William Brown further stated that he did not know anyone by the name of Charles Walker. (N.T. 20).

Appellant's statement, which was given to the police, also was introduced at trial. That statement consisted of the following:

"I was out drinking last night at the Hearts and Flowers Bar located at 13th and Arch with William Brown and he had a lot of drinks. So we left to go to the St. Francis on Walnut with a couple of girls. Well, we went to the St. Francis Hotel at Walnut Street with a couple of girls. Brown went with this girl named Janice, and he was feeling pretty good, so I took his car because I didn't think he would be using it. I took it to my house, and the next day my wife and I went to the Bamberger Department Store to buy some clothes. Then that night I took the car to the club, and I figured I would see William Brown there, and I would return the car." (N.T. 28–29).

From the evidence presented at trial, it is obvious that the issue of credibility was an important one in the case.

Additionally, after closing arguments were made by both counsels, appellant's attorney made a statement which would tend to establish that his actions earlier in the trial were not based on sound trial tactics. Trial counsel said:

"I would ask at this time to ask the complaining witness to come in. *I would be doing an injustice if I didn't question him.*

THE COURT: Your request is denied."

(Trial Transcript at 52).

Under these circumstances, we can say that the course *not* chosen by counsel (e.g., an objection to the stipulation) offered a potential for success substantially greater than the tactics actually utilized because by counsel stipulating to the testimony, "appellant gave up the opportunity to cross-examine [the] witness and to attempt to discredit his incriminating testimony." *Commonwealth v. Bridell,* 252 Pa.Super. at 605, 384 A.2d at 944.

█ The other aspect of appellant's claim concerns trial counsel's failure to object to the fact that no colloquy was taken by the court to demonstrate appellant's "understanding of the consequences of the stipulations, and his consent, thereto, was deemed necessary." *Id.*

For the same reasons previously given, counsel should have interposed an objection to the trial court's failure to conduct an on-the-record colloquy prior to the stipulation. The purpose of an on-the-record colloquy is to demonstrate that "appellant's decision to waive his valuable Sixth Amendment right to confront the Commonwealth's witnesses against him, was a knowing and understanding one." *Commonwealth v. Davis,* 457 Pa. at 198, 322 A.2d at 105. In the instant case, when counsel failed to take any action to insure against appellant's entry of an unknowing waiver and when counsel consented to a stipulation which incriminated appellant, the record reveals that "trial counsel's strategy amounted to a decision to have his client plead guilty." *Commonwealth v. Davis, Id.,* 457 Pa. at 199, 322 A.2d at 106. See also *Commonwealth v. Doman,* 490 Pa. 355, 358, 416 A.2d 507, 509 (1980) (where the prosecution was able to show that the owner had never given anyone else or the defendant permission to drive the automobile and the defendant was operating the automobile at the time he was arrested,

the evidence was sufficient to convict appellant of operating a motor vehicle without the consent of the owner).

Accordingly, the record fails to evince any indication that counsel's strategy was a sound one, and, as a result, the judgment of sentence is reversed, and a new trial is granted.