**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARREN TALBERT | : | |
| | : | |
| Appellant | : | No. 2480 EDA 2017 |

Appeal from the PCRA Order July 11, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004677-2012,
CP-23-CR-0004680-2012

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 17, 2018**

Appellant Darren Talbert appeals *pro se* from the order dismissing his first timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that the PCRA court erred in rejecting his claims based on the ineffective assistance of counsel and a violation of **Brady v. Maryland**, 373 U.S. 83 (1963).  We affirm in part, reverse in part, and remand for an evidentiary hearing.

The trial court set forth the facts of this case as follows:

On July 3, 2012 at 10:30 p.m.[,] Officer Kristine McAleer of the Upper Darby Township Police Department's Narcotics Unit met with a black male, known to her at that time as "Money[,"] on Baltimore Pike and Lewis Avenue for the purpose of purchasing heroin.  Officer McAleer contacted "Money" using cellular number 215-776-9834.  Officer McAleer handed "Money" sixty dollars in US currency in exchange for six white bags each containing a blue

---

[*] Former Justice specially assigned to the Superior Court.

wax paper bag filled with an off[-]white substance. "Money" advised Officer McAleer to contact him at cellular number 215-776-9834 for further purchases of heroin. Officer McAleer returned to headquarters and conducted a field test on the off-white substance using a Narco test kit. The test yielded a positive reaction for the presence of heroin.

On July 11, 2012 at 8:30 p.m.[,] Officer McAleer for the second time met with a black male, known as "Money," at 69th Street and Ludlow Avenue for the purpose of purchasing heroin. Officer McAleer contacted "Money" using cellular number 215-776-9834. Officer McAleer handed "Money" sixty dollars in US currency in exchange for six white bags each containing a blue wax paper bag filled with an off-white substance. "Money" advised Officer McAleer to contact him at cellular number 215-776-9834 for further purchases of heroin. Officer McAleer returned to headquarters and conducted a field test on the off-white substance using a Narco test kit. The test yielded a positive reaction for the presence of heroin.

Members of the Upper Darby Township Narcotics Unit had previously set up surveillance at 69th Street and Ludlow Avenue. The officers observed a blue Chevrolet Uplander bearing PA registration HZF-2042 pull up and park. Officers then observed an unknown black male exit this vehicle and walk directly to Officer McAleer. After a short period of time the unknown black male walked away from Officer McAleer and directly back to his vehicle, without making any stops. The vehicle was then observed leaving the area.

On July 12, 2012 at 5:40 p.m.[,] Officer McAleer for the third time met with a black male, known as "Money," at 69th Street and Ludlow Avenue for the purpose of purchasing heroin. Officer McAleer contacted "Money" using cellular number 215-776-9834. Officer McAleer handed "Money" sixty dollars in US currency in exchange for six white bags each containing a blue wax paper bag filled with an off[-]white substance. Members of the Upper Darby Township Narcotics Unit had previously set up surveillance at 69th Street and Ludlow Avenue. Officers observed the Uplander bearing PA registration HZF-2042 pull up and park. Officers then observed an unknown black male exit the vehicle and proceed directly to Officer McAleer. After a short period of time the unknown black male walked away from Officer McAleer and directly to the vehicle, without making any stops. At this time members of the Upper Darby Township Narcotics Unit approached

the vehicle and took "Money" into custody. "Money" was identified as Darren Talbert [(Appellant)]. Located on [Appellant] at the time of his arrest was a black and silver AT&T cellular phone, and five hundred and seventy dollars in US currency. Located inside the vehicle were two small children and an adult male identified as Mrwan Mohamed of 9601 Ashton Road, Apartment 26 Philadelphia[,] Pa[,] 19114. Mr. Mohamed was also arrested and charged in this matter.

Officer Timothy M. Bernhardt was present at [Appellant]'s arrest. Officer Bernhardt has been a police officer for the past fifteen years, the last ten of which were with the Upper Darby Police Department, and for the last seven years he was assigned to the narcotics division. At the time of [Appellant]'s arrest, [Appellant] was operating a blue Chevrolet Uplander bearing Pennsylvania registration HZF-2042. Officer Bernhardt observed [Appellant] driving this vehicle on all three occasions during the narcotics investigation. Based upon Officer Bernhardt's observations and Officer McAleer['s] investigation, it was Officer Bernhardt's belief this vehicle was operated by [Appellant] while in the possession of illegal narcotics.

Officer Bernhardt decided to impound the vehicle. Since the vehicle was located only a few blocks from the Police Station, Officer Bernhardt drove it there rather than having it towed. Upon arriving at the Police Station, Officer Bernhardt parked in their secure lot, locked the vehicle and then returned to duty to assist with other ongoing investigations.

The next day, July 13, 2012, Officer Bernhardt returned to [Appellant]'s vehicle to conduct an inventory of the Chevrolet Uplander per Upper Darby Township Police Department Policy #1200, "Inventory Searches of Auto's." Officer Bernhardt observed an air conditioning vent that was not properly attached to the vehicle dashboard. Officer Bernhardt was able to see the butt of a handgun through the air conditioning vent. Based on Officer Bernhardt's training and experience, he believed it is not uncommon for individuals to hide their monies, and or narcotics in hidden compartments.

After seeing the gun, Officer Bernhardt stopped the inventory search and obtained a search warrant. On Friday[,] July 13, 2012 at approximately 4:15 p.m., Officer Bernhardt executed a search warrant on the blue Chevrolet Uplander bearing Pennsylvania registration HZF-2042 that was being operated by [Appellant].

The following items were located as a result of the search: One (1) fully loaded Smith & Wesson 9mm hand gun with an obliterated serial number, Eighty Five (85) white plastic bags each filled with a blue wax paper bag filled with an off white substance, one Wachovia Check Card # 4828 6232 4901 2015 in the name Darren Talbert, one brown Gucci bag which contained the above mention[ed] Eighty Five (85) bags, one clear ziploc bag stamped with an apple, mail addressed to Darren Talbert of 325 N. 52nd Street, Philadelphia PA[,] 19139, a copy of proof of insurance for the Chevrolet Uplander policy number # 4065314, and a copy of the Pennsylvania registration for the Chevrolet Uplander bearing PA registration HZF-2042.

PCRA Ct. Op., 9/14/17, at 1-6.

Appellant was arrested and charged with various offenses at two separate dockets, CP–23–CR–0004680–2012 (Docket No. 4680) and CP–23–CR–0004677–2012 (Docket No. 4677), arising from his sales of heroin to the undercover police officer on July 3rd, 11th, and 12th of 2012. *See Commonwealth v. Talbert*, 51 EDA 2014, 2015 WL 7287984, at *1 (Pa. Super. 2015) (unpublished mem.). The trial court consolidated Appellant's cases.

Prior to trial, Appellant filed a motion to suppress, in relevant part, the items obtained during the search of Appellant's person and vehicle. *See* Mot. to Suppress, 6/4/13. The trial court held a hearing on Appellant's motion to suppress on June 11, 2013. *See generally* N.T., 6/11/13. We quote the relevant testimony from that hearing below. In denying Appellant's motion, the court reasoned that there was no doubt that probable cause existed to arrest Appellant and impound the vehicle he was driving, based on the officers' observations regarding Appellant's involvement in the sales of narcotics.

Order Denying Mot. to Suppress, 8/7/13, at 8. The court further reasoned that the inventory search of the vehicle was also proper as the vehicle was lawfully in police custody and the search was performed in good faith and in accordance with reasonable, standard police procedures. *Id.* at 8-9.

On August 15 and 16, 2013, the trial court held a trial. During trial, Appellant's counsel (trial counsel) stipulated to the admission of Commonwealth's exhibits C-4, C-5, and C-8. *See* N.T., 8/15/13, at 220-22. Exhibit C-4 was identified as being a manila envelope dated July 11, 2012, containing six bags with a blue wax paper and an off-white substance. *Id.* Exhibit C-5 was also identified as being a manila envelope containing six bags with a blue wax paper and an off-white substance, but dated July 12, 2012. *Id.* Exhibit C-8 was identified as the forensic lab report. *Id.* The relevant exchange regarding these stipulations was as follows:

> [Commonwealth]: Specifically that in Commonwealth's Exhibits C-1, C-4 and C-5 were submitted on **July 3, 2012** by Detective Brad Ross of the Upper Darby Township Police Department to the Pennsylvania State Police Bureau of Forensic Services, Lima Regional Laboratory.[1] And that on or about September 17, 2012 the bags contained in C-1, C-4 and C-5 were analyzed by Irena B. Eleshkovitch, Forensic Scientist II from the Lima Regional Laboratory, who concluded the following. . . . As to Commonwealth's Exhibit C-4, the powder in those bags was weighed at eleven-hundredths of a gram. The contents of a single bag which weighed three-hundredths of a gram were analyzed and found to contain heroin, Schedule I controlled substance. And as

_____

[1] We have the benefit of most of the exhibits being included in the certified record. A review of the forensic lab report shows the date Detective Brad Ross submitted exhibits C-4 and C-5 as July **30**, 2012. *See* Drug Identification Lab Report, 9/17/12, at 1.

to Commonwealth's Exhibit C-5, the powder in those bags weighed fifteen-hundredths of a gram. The contents of a single bag weighed two-hundredths of a gram and were analyzed and found to contain heroin, a Schedule I. Your Honor, we further stipulate that if called to testify Irene B. Eleshkovitch would be qualified as an expert in the Field of Forensic Science and Analysis. And that proper procedure were used during her analysis of Commonwealth's Exhibit C-1, C-4 and C-5. And following that a proper chain-of-custody has been maintained to Commonwealth's Exhibits C-1, C-4 and C-5 from the time that they were obtained by Officer Mc[A]leer to the time they were analyzed at the lab and up until they were presented in court today.

[Trial counsel]: So stipulated.

N.T., 8/15/13, at 220-22 (emphasis added).

On August 16, 2013, a jury convicted Appellant of the following offenses. At Docket No. 4680, the jury found Appellant guilty of possession with intent to deliver (PWID), PWID where Appellant possessed a firearm, and conspiracy to commit PWID. *See* N.T., 11/15/13, at 3-4. At Docket No. 4677, the jury found Appellant guilty of PWID, conspiracy, possession of a firearm with an altered serial number, and carrying a firearm without a license. *Id.* at 3-4. Appellant's aggregate sentence was six to twelve years' incarceration, followed by five years' probation. *Id.* at 20.

Appellant filed a direct appeal to this Court arguing: (1) that the trial court erred in failing to grant the motion to suppress the contents of the

vehicle;[2] (2) sufficiency of the evidence; and (3) that the mandatory minimum sentence imposed was unconstitutional in light of **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*).[3]  **See Talbert**, 51 EDA 2014, 2015 WL 7287984, at *2.  On April 1, 2015, this Court affirmed Appellant's convictions, but vacated Appellant's sentence under 42 Pa.C.S. § 9712.1, and remanded for resentencing.  **Id.** at *8-*9.  On May 1, 2015, Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on October 27, 2015.

_____

[2] During oral argument, Appellant's counsel indicated that he was abandoning the suppression issue.  **Talbert**, 51 EDA 2014, 2015 WL 7287984, at *2. Accordingly, this Court did not address that issue on appeal.  **Id.**

[3] The **Newman** Court held that the holding of **Alleyne v. United States**, 570 U.S. 99 (2013), rendered 42 Pa.C.S. § 9712.1, relating to sentences for certain drug offenses committed with firearms, unconstitutional in its entirety. **See Newman**, 99 A.3d at 98.

Section 9712.1(a) provides in relevant part:

> **Mandatory sentence.—**Any person who is convicted of a violation of section 13(a)(30) . . . , when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1(a).

On January 25, 2016, the trial court resentenced Appellant to an aggregate term of 72 to 136 months' incarceration. Appellant did not appeal the resentencing order.

On February 16, 2016, Appellant filed his *pro se* first PCRA petition. In his petition, Appellant alleged:

1. Trial counsel was unconstitutionally ineffective—counsel neglected to motion to arrest the criminal bill of information against [Appellant]. In light of extraordinary circumstances. [sic]

2. [Appellant]'s right to due process and a fair trial were violated by the misconduct of the District Attorney and deficient performance of defense counsel in failing to protect [Appellant]'s rights under the confrontation clause and the compulsory process in joint stipulations of and for the admissibility of the lab reports absent under oath qualifications.

3. The Commonwealth prosecuted the criminal matter in the case of *Com. v. Darren Talbert*, 4677-2012 and 4680-2012 in direct violation of the Pa. Rules of Discovery, *Brady*, and confrontation clause.

4. In light of trial counsel's deficient representation in failing to conduct mandatory pre-trial investigation which would have revealed illegal police questioning of a minor known to be [Appellant]'s younger brother age '8' in absence of a parent or guardian.

5. [Appellant]'s arrest, detention, subsequent jury trial convictions and the resulting sentences is [sic] unconstitutional and in direct violation of the *Miranda*[*v. Arizona*, 384 U.S. 436 (1966)] rule.

6. The good faith exception does not extend to the herein meritable case issues [1] through [7], the Commonwealth and its police agents sought not to pursue the interest of justice but rather a mere conviction and the court abandon[ed] its position of impartiality.

7. The trial court engaged in the role of super prosecutor when the Commonwealth obviously received preferential treatment during a sidebar conference regarding the admissibility and the

purported facts relevant to the introduction of photo identification of which is arguably at odds with United States Supreme Court controlling decisional law pursuant to **Brady v. Maryland**.

Mot. for Post Conviction Collateral Relief, 2/16/16, at 8, 13, 15, 17, 19, 21, 23 (unpaginated).

The PCRA court appointed counsel. On December 16, 2016, however, Appellant filed a motion to proceed *pro se*. On January 31, 2017, the court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On February 2, 2017, the court granted Appellant's petition to proceed *pro se*.

On March 15, 2017, Appellant filed an amended PCRA petition raising the same allegations as in his original PCRA petition and further alleging:

1. Trial court's instruction on the charge of possession of a firearm with obliterated manufacturer's number was erroneous because it did not require the Commonwealth to prove beyond a re[a]sonable doubt that [Appellant] knew that the serial number on the firearm had been obliterated when he possessed it.

2. [Appellant]'s right to due process and a fair trial guaranteed by the state and federal constitutions were violated by the misconduct of the Assistant District Attorney design[ed] intentionally to deprive petitioner of equal protection of the law and to secure a conviction through the concealment of exculpatory and impeachment evidence as well as the deficient performance of trial counsel in failing to conduct a mandatory pre-trial investigation.

3. When denying [Appellant]'s 4th [A]mendment challenge on grounds of unlawful search the court engaged in the role of super prosecutor by shrewd and calculated misrepresentation of the case record facts via memorandum mandate to assist the Commonwealth in the introduction of evidence in absence of establishing a proper chain of custody.

4. Trial and appella[te] counsel rendered ineffective assistance when neglecting to pursue and p[re]serve prejudicial error by the court's failure to provide the jury with instructions on the elements of entrapment in the presence of overwhelming evidence that [Appellant] was the victim of police persuasions constitutes reversible error.

Am. Pet. for Post-Conviction and *Habeas Corpus* Relief Under the Post-Conviction Act and the Pennsylvania Constitution (Amended PCRA), 3/15/17, at 19, 21, 26, 28 (unpaginated).

On May 4, 2017, the PCRA court filed a notice of its intent to dismiss the petition without a hearing. The court found that Appellant was attempting to re-litigate his underlying criminal conviction and that all his claims were previously litigated or waived. **See** Twenty Day Notice of Intent to Dismiss PCRA Pet. Without a Hr'g, 5/4/17, at 3. The court further found that Appellant failed "to proffer any evidence whatsoever to support his claim." **Id.** As for Appellant's ineffectiveness claims, the PCRA court stated that Appellant had "not raised any genuine issues of material fact or stated any grounds entitling him to relief under the PCRA." **Id.** at 6.

On June 19, 2017, Appellant filed a response to the PCRA court's notice of intent to dismiss. In his response, Appellant narrowed his arguments down to the following: (1) trial counsel was ineffective "by failing to [m]otion to [a]rrest the criminal bill of information"; (2) trial counsel was ineffective "by reason of joint stipulation for the admissibility of the lab reports, essentially violating [Appellant]'s right to confront witnesses"; (3) trial counsel was ineffective "by failing to conduct a mandatory pre-trial investigation, which

would have revealed illegal police questioning of a legal minor known to be [Appellant]'s younger brother in the absence of a parent or legal guardian"; and (4) the Commonwealth "intentionally committed fraud upon the [c]ourt in order to secure a criminal conviction against [Appellant]." Objs. to Notice of Intent to Dismiss PCRA, 6/19/17, at 2, 4, 6, 7.

On July 11, 2017, the PCRA court dismissed Appellant's petition. Appellant filed a timely notice of appeal. On August 3, 2017, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant complied. On September 14, 2017, the court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant, in his *pro se* brief, raises four issues on appeal, which we have reordered as follows:

1. Was trial counsel ineffective for stipulating to evidence which was at variance with the facts of the case, specifically by stip[u]lating that exhibits C-4 and C-5 were submitted to the Lima Regional Laboratory on July 3, 2012?

2. By stipulating to the proper chain of custody for the contents as well as to the authenticity of the results of a forensic lab report [(exhibit C-8)] where there exist[s] a clear fault in the chain which raises direct questions as to the truthfulness of the report was Appellant denied due process through trial counsel's stipulation and failure to request the presence of the forensic scientist for cross-examination?

3. Was trial counsel ineffective for failing to conduct a pre-trial investigation into the items recovered from Appellant at the time of arrest as well as the items recovered during the subsequent search of his vehicle prior to engaging into the stipulation where there existed the presence of exculpatory information?

- 11 -

4. Did the Commonwealth intentionally conceal exculpatory evidence from the [c]ourt at Appellant's suppression hearing through contesting against its existence and thereafter stipulating with trial counsel during trial that the evidence does in fact exist and was recovered from Appellant's vehicle?

Appellant's Brief at 4-5.

As a prefatory matter, we note that our standard of review from the dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted). Moreover, "[t]o be entitled to PCRA relief, [the defendant] must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), and that the allegation of error has not been previously litigated or waived." *Id.* at 1265-66.

## I.    Ineffectiveness

It is well-settled that to establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth*

*v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* (citation omitted); *see Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

Our Supreme Court has explained:

A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Counsel is presumed to have been effective and the burden of rebutting that presumption rests with the petitioner.

*Commonwealth v. Fletcher*, 986 A.2d 759, 772 (Pa. 2009) (quotation marks and citations omitted).

We add that "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011). Moreover, "[a] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Daniels*, 963 A.2d at 419.

### A. Stipulations

Appellant's first two issues involve claims that trial counsel was ineffective in entering into stipulations with the Commonwealth as to exhibits C-4, C-5, and C-8. We will discuss them together.

Appellant argues that his first two issues have arguable merit because trial counsel entered into a stipulation as to "Commonwealth's exhibit[s] C-4 and C-5 [being] confiscated and submitted to the Lima Regional Laboratory for testing on July 3, 2012" when the investigating officer testified that these exhibits were not confiscated until July 11th and 12th. *See* Appellant's Brief at 12 (citing N.T., 8/15/13, at 162-69, 220-22). Moreover, trial counsel stipulated to the admission of C-8—the forensic lab report—without the in-court testimony of the analyst who prepared the report. *Id.* at 16. This, Appellant argues, deprived him of the opportunity to confront and cross-examine the analyst. *Id.*

Generally, "testimony entered by counsel's stipulation may be so damaging that admission of the stipulation at trial must be surrounded by safeguards similar to those attending the entry of a guilty plea." *Commonwealth v. Williams*, 443 A.2d 338, 342 (Pa. Super. 1982) (citing *Commonwealth v. Davis*, 322 A.2d 103, 105 (Pa. 1974)). Thus, there must be an on-the-record colloquy to insure that a defendant is making a knowing and understanding decision to waive his valuable Sixth Amendment right to confront the Commonwealth's witness. *Id.* at 344 (citing *Davis*, 322 A.2d at

105. The question we ask is whether the stipulation made the outcome of the trial a forgone conclusion. *Id.* at 342 (citing *Davis*, 322 A.2d at 105).

Moreover, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the United States Supreme Court explained that the "Sixth Amendment to the United States Constitution . . . provides that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id.* at 309. The *Melendez-Diaz* Court explained that analysts' affidavits are testimonial statements covered by the Confrontation Clause and that analysts are witnesses for purposes of the Sixth Amendment. *Id.* at 311. "Absent a showing that the analysts [are] unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner [is] entitled to be confronted with the analysts at trial." *Id.* (emphasis, citation, and internal quotation marks omitted).

Here, the record contains discrepancies as to when the narcotics were recovered—July 11 and 12, 2012—and when they were submitted to the lab—July 3, 2012, or July 30, 2012. *See* N.T., 8/15/13, at 221-22; Drug Identification Lab Report, 9/17/12, at 1. Nevertheless, trial counsel's only response was "[s]o stipulated." *See id.*

Furthermore, there is no indication that trial counsel explained to Appellant the rights he was giving up by entering into the stipulation. *See Williams*, 443 A.2d at 342. Trial counsel entered into the stipulation as to the admissibility of exhibit C-8 and the proposed testimony of the analyst,

waiving Appellant's right to confront the analyst, notwithstanding the fact that the Commonwealth did not claim that the analyst who prepared the lab report was unavailable. **See generally** N.T., 8/15/13, at 221; **see also Melendez-Diaz**, 557 U.S. at 311.

Moreover, trial counsel did not object to the lack of an "on-the-record colloquy" by the trial court to insure that Appellant was making a knowing and understanding decision to waive his Sixth Amendment right to confront the Commonwealth's witnesses. **See Williams**, 443 A.2d at 344.

Thus, the stipulations at issue made the outcome of the trial a foregone conclusion—that the items Appellant sold to Officer McAleer on July 11 and 12, 2013 and submitted to the lab for testing were narcotics, *i.e.*, heroin. **See id.** at 342. Therefore, we conclude Appellant's first two issues have arguable merit.

Next, Appellant argues that trial counsel had no reasonable basis for stipulating to the admissibility and chain of custody of exhibits C-4, C-5, and C-8 because the lab report was inconsistent with the facts of the case and the Commonwealth relied heavily on those reports in convicting him of PWID. Appellant's Brief at 13, 16-18.

In making a determination as to reasonable basis, "our Supreme Court has cautioned against finding no reasonable basis for trial counsel's actions in the absence of supporting evidence." **See Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 783-84 (Pa. Super. 2015) (*en banc*). "The fact

that an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular failure to raise a plausible objection does not necessarily prove that an objectively reasonable basis was lacking." *Id.* at 784 (citation omitted). "This Court does not sit as a fact-finder." *Id.*

Here, we do not have the benefit of trial counsel's testimony from a PCRA hearing. While trial counsel might have had a reasonable basis for stipulating to the admission of the lab report,[4] we have no evidence of record of what that basis might have been. Further, we have no evidence of record that trial counsel discussed with Appellant what the stipulation was about, the rights Appellant was waiving by entering into the stipulation, and the

_____

[4] The ***Melendez-Diaz*** Court acknowledged that there are situations where there may be a strategic basis for counsel to enter into stipulations regarding the testimony of an analyst:

> Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion. The *amicus* brief filed by District Attorneys in Support of the Commonwealth in the Massachusetts Supreme Court case upon which the Appeals Court here relied said that it is almost always the case that [analysts' certificates] are admitted without objection. Generally, defendants do not object to the admission of drug certificates most likely because there is no benefit to a defendant from such testimony.

***Melendez-Diaz***, 557 U.S. at 328 (internal quotation marks, footnote, and citation omitted).

consequences of such stipulation. *See Melendez-Diaz*, 557 U.S. at 311; *Williams*, 443 A.2d at 342.

Finally, Appellant argues that he was prejudiced because the stipulations "relieved the Commonwealth of its burden to prove its case beyond a reasonable doubt that the substances forwarded to the lab were in fact narcotics." Appellant's Brief at 14. Appellant also claims that he was prejudiced because trial counsel's stipulation "hampered" his right to confront the forensic scientist regarding whether C-8 was "submitted to the lab on July 3, 2012 and [the results in the lab report] are in fact the results of a true and authentic analysis prepared by [the analyst]." *Id.* at 19.

In establishing prejudice, Appellant must prove that there is a reasonable probability that, but for trial counsel's error, the outcome of the proceeding would have been different. *See Fletcher*, 986 A.2d at 772.

Here, the stipulations to exhibits C-4, C-5, and C-8 prevented Appellant from determining when the alleged narcotics were submitted to the lab for testing. Moreover, he was deprived of his right to confront and cross-examine the analyst as to this discrepancy in dates and whether the results in the lab tests were result of a true and authentic analysis. *See Melendez-Diaz*, 557 U.S. at 311. If the aforementioned exhibits were submitted to the lab for testing on July 3, 2012, prior to the sales on July 11 and 12, the discrepancy in dates could render the lab results inadmissible. This could lead to a reasonable probability that the proceeding would have been different. *See*

*Fletcher*, 986 A.2d at 772; *Turetsky*, 925 A.2d at 880. Thus, we conclude Appellant has established prejudice.

Because the trial court did not hold a hearing on Appellant's PCRA petition, we have no record to determine trial counsel's basis for entering into the stipulations. Therefore, we remand for an evidentiary hearing to determine whether trial counsel had a reasonable basis for entering into the stipulations of exhibits C-4, C-5, and C-8. *See Reyes-Rodriguez*, 111 A.3d at 778 ("[A] lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." (footnote and citation omitted)).

### B. Pre-trial Investigation

Next, Appellant claims trial counsel was ineffective for failing to conduct a "pre-trial investigation" into the items recovered from Appellant at the time of his arrest or from the subsequent search of the vehicle. Appellant's Brief at 26. Appellant claims that had trial counsel conducted a pre-trial investigation, he would have discovered "fruitful results through the acquisition of favorable information concerning the existence and date of recovery of the I.D. cards." *Id.* Appellant argues that with this information, counsel could have challenged the seizure of the I.D. cards. *Id.* He further argues that counsel had no reasonable basis for failing to investigate, especially since counsel was aware that the vehicle was driven "to police headquarters by one of the arresting/investigating officers." *Id.* at 27.

Regarding the prejudice prong, Appellant claims that counsel's failure to investigate led to a stipulation without first establishing a proper chain of custody. *Id.* at 28. More specifically, Appellant claims that because the investigating officer applied for a search warrant on July 13, 2012, the I.D. cards seized on July 12, 2012 were unlawfully obtained. *Id.* at 28-29.

By way of background, at the suppression hearing, trial counsel attempted to address a discrepancy regarding I.D. cards recovered following Appellant's arrest. *See generally* N.T., 6/11/13, at 80-92. The following relevant exchange occurred:

> [Trial counsel]: Officer McAleer is the author of the incident report, dated July 12, apparently, she would have known where the items, with respect to -- and to wit, money, silver -- excuse me. Black and silver AT&T phone and by money, I don't mean what the Commonwealth [sic] allegation about his alias. I'm talking about actual United States currency and as well as, a black cell phone, a Pennsylvania I.D. card, as well as, a debit card, where those items were recovered from.
>
> [The Court]: Commonwealth?
>
> [Commonwealth]: With respect to the items referenced in the police report as being seized to [Appellant] at the time of his arrest, I'll stipulate that those items were taken from him, incident to an arrest.
>
> [The Court]: Okay.
>
> [Trial counsel]: Well, I'm not asking for that stipulation because the paperwork is not clear to me. That's why -- I -- we have a different opinion. I think that those items were taken from the Uplander and that's what I want to get to the bottom of. Since she's the author of this report . . .
>
> * * *

- 20 -

[Trial counsel]: That's part of the -- that's the head scratcher.  If she testified -- she testified exactly to that and then on the report that she authored, says something very different.

* * *

[Trial counsel]: [Officer McAleer] did you author an incident report regarding the circumstances of July 12?

* * *

[Officer McAleer]: Yes.

Q. Okay.  And in that incident report, you chronicled money having been recovered, as well as a cell phone.  Agree?

A. Okay, yes.

Q. Okay.  And a debit card and a PA identification card in the name of [Appellant].  Right?

* * *

[Commonwealth]: Wait a second.    Objection, Judge, to misconstruing what's in her report.

[Trial counsel]: And if she didn't, she can say no.

[The court]: I'm sorry.  What did you . . .

[Commonwealth]: Well, that -- I'm sorry, Judge.  If he's going to ask about her report, he has to let her -- he can't try to trick her and say that's in there too.  Ha-ha, it's not.

[The court]: Yeah.  Okay.

*Id.* at 80-82, 86-87.

It is well settled that "[c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary.  Counsel's unreasonable failure to prepare for trial is 'an abdication of the minimum performance required of defense counsel.'"

*Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009) (citation omitted).

A review of the transcript of the hearing on Appellant's motion to suppress shows that counsel was aware of the discrepancy regarding when and where the I.D. cards were recovered. *See generally* N.T., 6/11/13, at 80-92. However, Appellant's counsel was unsuccessful in attempting to raise this issue. *Id.*

Moreover, counsel for Appellant ultimately had the information related to the I.D. cards admitted at trial. *See* N.T., 8/16/13, at 9-10, 14. During trial, Sergeant Bernhart testified that a search of the vehicle revealed, among other things, Pennsylvania I.D. cards, one with Appellant's name. *Id.* Upon counsel's questioning during cross-examination, Sergeant Bernhart acknowledged that he could not make out the names. *Id.* at 14. Further, the Commonwealth stipulated that the names on the cards were of Aaron Talbert-Wilkinson and Mrwan Mohamed, not Appellant's. *Id.* at 14. Accordingly, Appellant has not met his burden of proving that there is an issue of arguable merit, nor does he explain how he has been prejudiced.

## II. *Brady* Violation

Next, Appellant contends that the Commonwealth "withheld exculpatory and impeachment evidence during his pre-trial suppression hearing by resorting to extreme measures in making an objection to deflect the nature and existence of exculpatory evidence." Appellant's Brief at 21. Specifically,

Appellant argues that "by objecting and arguing against the existence of the exculpatory evidence at the suppression stage and then to ultimately present a stipulation confirming its existence amounts to fraud upon the court." ***Id.***

To succeed on a ***Brady*** claim, an appellant must show that: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." ***Commonwealth v. Roney***, 79 A.3d 595, 607 (Pa. 2013) (citation omitted). The evidence must be "material evidence that deprived the defendant of a fair trial." ***Id.*** (citation omitted). Further, constitutional error results from the Commonwealth's suppression of the evidence "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Id.*** Appellant bears the burden of proving "by reference to the record, that evidence was withheld or suppressed by the prosecution." ***Id.***

The Pennsylvania Supreme Court has further explained that

> ***Brady*** does not require the disclosure of information "that is not exculpatory but might merely form the groundwork for possible arguments or defenses," nor does ***Brady*** require the prosecution to disclose "every fruitless lead" considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. ***Brady*** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

*Id.* at 608 (citations and emphasis omitted).

Initially, we note that Appellant had this information available at the time of his direct appeal, but failed to raise it. Thus, he has waived this claim. *See* 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so . . . on appeal[.]").

In any event, we note that Appellant incorrectly states that the Commonwealth objected to the existence or admissibility of identification cards at the suppression hearing. During that hearing, the only discussion of identification cards was during Officer McAleer's direct-examination, where Appellant's counsel asked Officer McAleer whether "a debit and a PA identification card in the name of Darren Talbert" were recovered from Appellant on July 12th. N.T., 6/11/13, at 87. The Commonwealth's objection was to the form of the question, which the Commonwealth argued, seemed to "try to trick [the officer]." *Id.*

Thus, Appellant has further failed to prove that the alleged material evidence was suppressed by the Commonwealth. Accordingly, his claim of prosecutorial misconduct fails.

Order affirmed in part and vacated in part. Case remanded for further proceedings regarding trial counsel's basis for entering into the stipulations of exhibits C-4, C-5, and C-8. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/18